**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED JUNE 28, 2010

ANTHONY PELLEGRINO, Individually
and as Personal Representative of the Estate
of SHIRLEY ANN PELLEGRINO,

     Plaintiffs-Appellees,

v                                 No. 137111

AMPCO SYSTEM PARKING,

     Defendant-Appellant.

BEFORE THE ENTIRE BENCH

MARKMAN, J.

This case raises the question whether, absent a finding that a peremptory challenge is barred by *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), because it is motivated by race, a trial court may nevertheless deny a party the use of a peremptory challenge on the basis of the court's desire to attain a racially proportionate jury. We hold that such a denial violates the rule of *Batson* that jurors must be "indifferently chosen" and is therefore in violation of both the equal protection guarantees of the federal and state constitutions, US Const, Am XIV, § 1 and Const 1963 art 1, § 2, and MCR 2.511(F)(2). Decisions to include, and to exclude, particular jurors must be undertaken without consideration of race. Accordingly, we reverse the contrary

judgment of the Court of Appeals and remand for a new trial on the issue of damages only.

## I. FACTS AND HISTORY

On April 7, 2003, Anthony Pellegrino and his wife, Shirley, were riding in an airport shuttle van operated by defendant, Ampco System Parking, when the van swerved on ice and hit a concrete barrier. Shirley was killed, and Anthony sustained serious injuries. As personal representative of Shirley's estate and individually on his own behalf, Anthony filed a third-party no-fault action against defendant, which conceded liability, leaving for trial only the question of damages.

Before voir dire, the trial court instructed the attorneys that "it would be a goal of [the court] to have a jury that represented the racial composition of this county." Subsequently at voir dire, defense counsel sought to peremptorily excuse prospective juror Sylvia Greene, an African-American woman, and plaintiffs' counsel raised an objection based on *Batson*, alleging that defense counsel had already peremptorily challenged two prospective jurors on the basis of race. In response, defense counsel argued that he wanted to excuse Greene because she had been widowed two times and was in the process of grieving over the death of her mother. Without making any finding about whether plaintiffs' counsel had established grounds for denying the peremptory challenge, the trial court denied it, and Greene remained on the jury.

After invoking MCR 2.511(F),[1] defense counsel asserted that he had supplied a legitimate nonracial rationale for his peremptory challenges and argued that plaintiffs' *Batson* issue was a "red herring" and unsupported. He then advised the trial court that he intended to file a motion either to remove Greene or for a mistrial, to which the trial court responded: "We have a jury of eight women. Three are African-American. In my view, it adequately represents the community from which this case arises." In a unanimous verdict, the six jurors who deliberated eventually awarded $14.9 million to plaintiffs.

Defense counsel again objected to the court's denial of his peremptory challenge in a posttrial motion and requested a new trial. He argued that the trial court had failed to follow *Batson* procedures, stating that, although it is an "emulative approach" to want to "equalize[e] jurors because of the Wayne County problems of amassing enough minority jurors," it is "not the law." Defense counsel also asserted that MCR 2.511(F)(2) superseded the court's own view of its obligations in the selection of juries.

---

[1] MCR 2.511(F) forbids taking race into account during voir dire for the purpose of achieving what the court believes to be a balanced, proportionate, or representative jury and provides:

> (1) No person shall be subjected to discrimination during voir dire on the basis of race, color, religion, national origin, or sex.

> (2) Discrimination during voir dire on the basis of race, color, religion, national origin, or sex for the purpose of achieving what the court believes to be a balanced, proportionate, or representative jury in terms of these characteristics shall not constitute an excuse or justification for a violation of this subsection.

MCR 2.511(F) became effective January 1, 2006, and therefore applied in the instant trial.

3

In denying the motion, the trial court rejected the notion that an objection based on *Batson* could only be sustained on a showing of racial considerations, asserting that "the federal threshold is dreadful and it renders nugatory the Batson challenge." After indicating further that it did not think defense counsel was "racist" or should be accused of "racism," the trial court stated:

> . . . I told you on the record, and this may get me into hot water with [the] Appeals Court, I won't find it. I will not do that.

> \* \* \*

> . . . I have six African American children of my own. I am not going to indulge in the race baiting that that kind of an opinion or that kind of finding would require of me.

Defense counsel then interjected that the whole point of peremptory challenges is to excuse prospective jurors even though they do not meet the legal disqualification standards of MCR 2.511(D), and the trial court continued:

> Well I guess I'm [in] sufficient hot water with the appellate courts to say I'm not going to . . . indulge in . . . race baiting . . . . Now if the Supreme Court rules that way, I suspect they would not but if they do, then I'll have to decide whether I can function as a judge any longer.

Finally, the trial court stated that it understood that defense counsel was

> focusing upon the intent of the Batson challenge. However, there are competing interests. There is no other county in the state of Michigan with as diverse racial composition as Wayne County. . . .

> \* \* \*

> . . . I am until either removed from the bench by the disciplinary committee or ordered to have a new trial, I am going to seek to have this proportional representation on the juries that hear cases in this court. I can't be clearer. I'm going to do it until I'm ordered not to do it and then when I'm ordered not to do it, then I'll have to decide what's next for me.

4

Defendant appealed in the Court of Appeals, raising a host of issues, including the trial court's denial of its peremptory challenge, and that Court affirmed in a split decision. *Pellegrino v Ampco Sys Parking*, unpublished opinion per curiam of the Court of Appeals, issued May 27, 2008 (Docket No. 274743). The majority concluded that although the trial court had not followed *Batson* procedures, no constitutional error occurred because such an error occurs only when a prospective juror is *excused* on the basis of race, rather than *included* on that basis. Thus, the majority opined, the trial court had merely denied defendant the use of a single peremptory challenge, which was subject to a harmless-error analysis. The majority then concluded that the error was, in fact, harmless because the only issue at trial had been damages and the verdict had been unanimous. Finally, the majority asserted that MCR 2.511(F)(2) had not been violated:

> To the extent that the trial court desired a racially balanced jury, such a desire does not run afoul of MCR 2.511(F)(2). MCR 2.115(F)(2) [sic] prohibits "[d]iscrimination during voir dire on the basis of race[,]" and we cannot conceive how the trial court's desire to have a racially balanced jury could possibly be characterized as "discrimination" under MCR 2.115(F)(2) [sic]. [*Id.* at 9.]

Judge O'CONNELL, in partial dissent, stated:

> The trial court's refusal to follow the law was not confined to *Batson*. During jury selection, defendant's counsel also brought to the trial court's attention a Michigan Supreme Court order regarding what ultimately became MCR 2.511(F). Our Supreme Court had already stated in [*People v*] *Knight*, [473 Mich 324; 701 NW2d 715 (2005)], that "the right to a fair and impartial jury does not entail ensuring any particular racial composition of the jury."[3] *Id.* at 349. The footnote to the statement specifically notes that a "proposed court rule would expressly prohibit the use of peremptory challenges to achieve a racially proportionate jury" and cites the exact language now found in MCR 2.511(F). *Id.* at 349, n 17. The trial judge not only admitted that he told counsel before jury selection that he "was interested and it would be a goal of [his] to have a jury that represented the

5

racial composition of this county," but also stated that he would refuse to adhere to MCR 2.511 unless ordered to do so:

> "I am until either removed from the bench by the disciplinary committee or ordered to have a new trial, I am going to seek to have this proportional representation on the juries that hear cases in this court. I can't be clearer. I'm going to do it until I'm ordered not to do it and then when I'm ordered not to do it, then I'll have to decide what's next for me."

> For a trial judge to state on the record that he refuses to follow the law and will continue to do so unless removed from office does more than imply prejudice in the proceedings, it admits them. I can think of no ground for reversal more clear than that.

---

[3] This statement is consistent with the United States Supreme Court's ruling that "[r]ace cannot be a proxy for determining juror bias or competence." *Powers v Ohio*, 499 US 400, 410; 111 S Ct 1364; 113 L Ed 2d 411 (1991). Decisions about jurors may not be made based on race, good intentions notwithstanding.

---

[*Id*. at 5-6 (O'CONNELL, P.J., concurring in part and dissenting in part).]

Defendant appealed, and this Court granted leave to appeal, "limited to the issue whether the defendant is entitled to a new trial based on a violation of MCR 2.511(F)(2)." 483 Mich 999 (2009).

## II. STANDARD OF REVIEW

We review constitutional questions de novo. *Sidun v Wayne Co Treasurer*, 481 Mich 503, 508; 751 NW2d 453 (2008). We also review lower courts' interpretations and applications of court rules de novo. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009).

## III. *BATSON v KENTUCKY*

In a civil trial, "[e]ach party may peremptorily challenge three jurors." MCR 2.511(E)(2). Before 1986, a party was free to peremptorily remove a prospective juror

6

for any reason.  But in *Batson*, 476 US at 89, 96-98, the United States Supreme Court held that a prosecutor's peremptory challenge to strike a prospective juror may not be exercised on the basis of race because such an action violates the Equal Protection Clause of the Fourteenth Amendment.[2]  Later that year, the Court expanded *Batson* to civil cases.  *Edmonson v Leesville Concrete Co, Inc*, 500 US 614; 111 S Ct 2077; 114 L Ed 2d 660 (1991).[3]

The United States Supreme Court has reinforced *Batson* on several occasions.  In 1991, the Court held that a defendant could raise a *Batson* issue even if the excused juror was not the same race as the defendant.  *Powers v Ohio*, 499 US 400, 415; 111 S Ct 1364; 113 L Ed 2d 411 (1991).[4]  Then, in *Georgia v McCollum*, 505 US 42, 59; 112 S Ct

---

[2] *Batson* established a three-step process for determining whether a challenger has improperly exercised peremptory challenges.  First, the opponent of the challenge must make a prima facie showing of discrimination based on race. *Id*. at 94-97.  Once the prima facie showing is made, the burden then shifts to the party attempting to strike the prospective juror to come forward with a neutral explanation for the challenge. *Id*. at 97.  Finally, the trial court must decide whether the opponent of the challenge has proved purposeful discrimination. *Id*. at 98.  If so, the peremptory challenge will not be allowed.  This Court has mandated that trial courts "meticulously follow *Batson*'s three-step test" and strongly urged them "to *clearly* articulate their findings and conclusions on the record." *People v Knight*, 473 Mich 324, 339; 701 NW2d 715 (2005).

[3] In *Edmonson*, 500 US at 630, the Court stated:

Racial discrimination has no place in the courtroom, whether the proceeding is civil or criminal. . . .

[I]f race stereotypes are the price for acceptance of a jury panel as fair, the price is too high to meet the standard of the Constitution.

[4] "[R]ace neutrality in jury selection [is] a visible, and inevitable, measure of the judicial system's own commitment to the commands of the Constitution.  The courts are

2348; 120 L Ed 2d 33 (1992), the Court extended *Batson* to peremptory challenges by criminal defendants. Finally, in 1994, the Court expanded *Batson* to peremptory challenges on the basis of gender. *J E B v Alabama*, 511 US 127, 146; 114 S Ct 1419; 128 L Ed 2d 89 (1994).

This Court has also issued opinions addressing *Batson*, as well as enacting MCR 2.511 (F). In *People v Bell*, 473 Mich 275; 702 NW2d 128 (2005),[5] the trial court denied defense counsel's efforts to peremptorily strike two white males after defense counsel had already struck several other white males. In response to the prosecutor's claim that there was an inference of discrimination in such challenges, defense counsel argued: "'[T]he number of white males on that panel still exceeds the number of the minorities on that panel. Why don't you talk about the whole racial composition of that panel? There's still a vast majority of white members on that panel than . . . black members on that panel.'" *Id*. at 289. This Court concluded that the trial court had properly denied defense counsel's peremptory challenges and added that "[j]ust as a challenger may not exclude a prospective juror on the basis of race, it is equally improper for a challenger to engineer the composition of a jury to reflect the race of the defendant." *Id*. at 290.

---

under an affirmative duty to enforce the strong statutory and constitutional policies embodied in that prohibition." *Powers*, 499 US at 416.

[5] *Bell* was a divided case producing five opinions. Only parts I through III of the lead opinion in *Bell* garnered majority support. Justice WEAVER concurred, then Chief Justice TAYLOR dissented in part and concurred in part, then Justice KELLY dissented, and Justice CAVANAGH also separately dissented.

8

In *People v Knight*, 473 Mich 324; 701 NW2d 715 (2005)*,* decided the same day, defense counsel objected that the prosecutor was using peremptory challenges to exclude African-Americans from the jury. After hearing the prosecutor's reasons for his challenges, the trial court said:

> "[T]wo or three minority jurors [are] left on this panel. So I think we are getting close to a serious issue here."
>
> * * *
>
> ". . . I think we're getting close to a sensitive issue here on [prospective jurors] Jones and Johnson. . . ."
>
> * * *
>
> "With the panel we ended up with, I think that any *Batson* problems that may have been there have been cured." [*Id.* at 331-334 (emphasis deleted).]

On appeal in this Court, in the course of explaining that the trial court had never found a *Batson* violation, we stated:

> [T]he record is susceptible to the fair inference that the trial judge acted to preserve the presence of minority jurors on the panel, knowing that the jury pool, as a matter of chance, was largely Caucasian. Protecting a defendant's right to a fair and impartial jury does not entail ensuring any particular racial composition of the jury. . . .
>
> * * *
>
> [T]he [judge's] comments demonstrate that her true motivation was to ensure some modicum of racial balance in the jury panel. Use of peremptory challenges, however, to ensure racial proportionality in the jury is prohibited by *Batson* and will be prohibited by proposed MCR 6.412(F)[6] if adopted.

---

[6] The proposed court rule was eventually incorporated as MCR 2.511(F) rather than MCR 6.412(F).

* * *

> The trial judge failed to recognize that a defendant is not entitled to a jury of a particular racial composition as long as no racial group is systematically and intentionally excluded. [*Id*. at 348-351.

Justice CAVANAGH, joined by then Justice KELLY and then Chief Justice TAYLOR, concurred in part and dissented in part. Although Justice CAVANAGH concluded that the trial court had found a *Batson* violation, as relevant here, he stated: "I tend to agree with the majority and suspect that some of the trial court's statements arguably stemmed from its desire to ensure a racially mixed jury and that such a desire is prohibited by *Batson* and its progeny." *Id*. at 361 (CAVANAGH, J., concurring in part and dissenting in part). In the end, all seven justices agreed that *Batson* prohibited a trial court from acting to preserve the presence of minority jurors on a jury panel because of a desire to ensure a racially mixed jury.

## IV. APPLICATION

Plaintiffs argue that the trial court's refusal to allow defendant to exercise a peremptory challenge of prospective juror Greene was consistent with the constitution and court rules because the trial court was merely seeking to ensure that that the jury represented a "fair cross-section of the community." We reject this argument because the trial court's actions violated the race-neutral requirements of both the constitution and MCR 2.511(F)(2). Greene's retention on the jury was predicated on her race, as well as the races of other jurors; each of these racial considerations was paramount in the decision of the trial court to reject defendant's peremptory challenge. As MCR 2.511(F)(2) makes explicit, a court's desire to achieve a "balanced, proportionate, or

10

representative jury" does not justify taking race into consideration in selecting a jury. Notwithstanding this express prohibition, the trial court premised its jury-selection decisions on its determination to secure "proportional representation" based on the racial composition of the county in which the trial occurred. In denying defendant's peremptory challenge, the court expressly took Greene's race into account and expressly evaluated her race in light of the race of every other juror on the panel. It is hard to conceive of a more flagrant and unambiguous violation of the court rule.

Moreover, the prohibition found in MCR 2.511(F)(2) is altogether consistent with, and indeed premised on, our federal and state constitutions,[7] as well as United States Supreme Court and Michigan Supreme Court precedents.[8] These demonstrate that a purpose or motive of attaining a racially balanced jury does not provide the trial court with the authority to deprive a party of a proper peremptory challenge.

In *Taylor v Louisiana*, 419 US 522, 538; 95 S Ct 692; 42 L Ed 2d 690 (1975), the United States Supreme Court held that defendants are not entitled to a jury of any particular composition: "[I]n holding that petit [trial] juries must be drawn from a source

---

[7] US Const, Am XIV, § 1 provides: "[N]or shall any State . . . deny to any person . . . the equal protection of the laws." Indeed, Const 1963, art 1, § 2, unlike its federal counterpart contained in the Fourteenth Amendment, explicitly prohibits discrimination on the basis of race: "No person shall be denied the equal protection of the laws . . . because of . . . race . . . ."

[8] Justices CAVANAGH, KELLY, and WEAVER opposed the adoption of MCR 2.511(F) because, among other reasons, the rule, in their view, was "unnecessary" and added "no substantive value to the case law already in existence." 474 Mich ccxli, ccxliii (KELLY, J., dissenting). No justice questioned the consistency of the court rule with the federal or state constitutions or with federal or state caselaw.

fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population."[9] And in *Lockhart v McCree*, 476 US 162, 173; 106 S Ct 1758; 90 L Ed 2d 137 (1986), the United States Supreme Court observed: "We have never invoked the fair-cross-section principle to invalidate the use of either for-cause or peremptory challenges to prospective jurors, or to require petit juries, as opposed to jury panels or venires, to reflect the composition of the community at large."[10] Subsequently, in *Holland v Illinois*, 493 US 474, 480; 110 S Ct 803; 107 L Ed 2d 905 (1990), the Court held that the fair-cross-section requirement cannot be interpreted as prohibiting peremptory challenges, stating: "[The] Sixth Amendment requirement of a fair cross section [of the community] on the venire is a means of assuring, not a *representative* jury (which the Constitution does not demand), but an *impartial* one (which it does)."

---

[9] As earlier explained in *Batson,* 476 US at 86 n 6: "[I]t would be impossible to apply a concept of proportional representation to the petit jury in view of the heterogeneous nature of our society." See also *United States v Jackman*, 46 F3d 1240, 1244 (CA 2, 1995), which held that the Sixth Amendment "guarantees the *opportunity* for a representative jury venire, not a *representative venire itself*." (Second emphasis added.)

[10] See *United States v Nelson*, 277 F3d 164, 172 (CA 2, 2002), in which the trial court replaced an excused black juror with another black juror, rather than the white first alternate, and at the same time replaced another empanelled white juror with a religious-minority white juror, also selected out of order from the list of alternates. The court justified its actions by reference to a desire for a racially and religiously balanced jury. *Id*. In response, the United States Court of Appeals for the Second Circuit stated: "[A]lthough the motives behind the district courts race- and religion-based jury selection procedures were undoubtedly meant to be tolerant and inclusive rather than bigoted and exclusionary, that fact cannot justify the district court's race-conscious actions." *Id*. at 207.

Thus, given that the trial court did not determine that defendant's peremptory challenge was racially motivated, the court's stated desire to have the racial composition of the jury be "representative of the community" did not justify or authorize the court's denial of that challenge.

Even more fundamentally, the trial court's denial of defendant's peremptory challenge violated the constitutional principles set forth in *Batson*:

> [T]he defendant does have the right to be tried by a jury whose members are selected pursuant to non-discriminatory criteria. . . .
>
> . . . Those on the venire must be "indifferently chosen" to secure the defendant's right under the Fourteenth Amendment . . . .
>
> * * *
>
> The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. [*Batson*, 476 US at 85-87.]

The trial court's refusal to allow defendant to strike prospective juror Greene without finding any *Batson* violation led to at least one member of the jury having been selected, not pursuant to nondiscriminatory criteria, but precisely on the basis of race. Greene's presence on the jury was thus the result not of being "indifferently chosen," as required by *Batson*, but of having been chosen specifically on the basis of race. As asserted in *Batson*, this inflicts harm on defendant, on the prospective juror who was excluded because of Greene's retention, and indeed on the "entire community." The trial court's process transformed the jury from a group of mere citizens into a group in which a person's racial background became defining, and it transformed the selection process from one that was neutral in terms of race into one that was predicated on race. While

13

this may be the process preferred by the trial court, it is not the process set forth by the federal or state constitutions or by federal or state law. As stated in *Powers*, 499 US at 415: "The Fourteenth Amendment's mandate that race discrimination be eliminated from all official acts and proceedings of the State is most compelling in the judicial system." Quite simply, in the absence of a *Batson* violation, the trial court had no right to take Greene's or any other prospective juror's race into account in denying defendant's peremptory challenge. When it did so, the selection of the jury ceased to be indifferent to race, but instead became preoccupied with race.

The Court of Appeals concluded that no *Batson* error occurred because a *Batson* error occurs only when a prospective juror is actually *dismissed* on account of race. We respectfully disagree. While *Batson* violations have typically involved the exclusion of a prospective juror on the basis of race, the constitutional principles articulated in *Batson* are not so limited. *Batson* and its progeny generally speak in terms of the prohibition of "discrimination" involving prospective jurors, not merely the *exclusion* of prospective jurors on the basis of race. See, e.g., *Powers*, 499 US at 404 ("Although a defendant has no right to a 'petit jury composed in whole or in part of persons of [the defendant's] own race,' he or she does have the right to be tried by a jury whose members are selected by nondiscriminatory criteria.") (citation omitted). Furthermore, in stressing that no person should intentionally be excluded on account of race, these cases support the conclusion that the purposeful *inclusion* of a particular juror on account of race-- which by its logic necessarily implies the *exclusion* of another individual in the "zero sum" process that characterizes jury selection-- also offends the constitution. See, e.g., *Knight*, 473 Mich at

14

349 ("The goal of *Batson* and its progeny is to promote racial neutrality in the selection of a jury and to avoid the systematic and intentional exclusion of *any* racial group.") (emphasis added).

The United States Supreme Court has effectively adopted a "zero tolerance" approach toward racial considerations affecting the choosing of a jury. This approach is implicated when a prospective juror has been excluded on account of race, and it is similarly violated when a proper peremptory challenge has been denied because of the prospective juror's race or the races of the other prospective jurors. See, e.g., *Cassell v Texas*, 339 US 282, 287; 70 S Ct 629; 94 L Ed 839 (1950), in which the lead opinion stated: "Proportional racial limitation is therefore forbidden. An accused is entitled to have charges against him considered by a jury in the selection of which there has been *neither inclusion nor exclusion because of race.*" (Emphasis added.) And, as the lead opinion stated in *Bell*, "it is . . . improper . . . to engineer the composition of a jury to reflect the race" of a party. *Bell*, 473 Mich at 290 (opinion by CORRIGAN, J.).

As previously indicated, all seven justices of this Court agreed in *Knight* that *Batson* prohibits a trial court from acting to preserve the presence of minority jurors on a jury panel because of a desire to ensure a racially balanced jury. Here, however, the trial court expressly acknowledged that it was attempting to engineer the composition of the jury to reflect the "diverse racial composition" of the community. The trial court was not free to do this under the law and constitution and, by doing so, violated the constitutional right of defendant to a jury that, with regard to race, had been "indifferently chosen."

In sum, we find that the wrongful *inclusion* of a juror on account of race should be treated the same as the wrongful *exclusion* of a prospective juror on account of race. Each situation violates the constitutional command that jurors be selected pursuant to criteria that do not take race into account, each deprives a defendant of a jury that has been "indifferently chosen" in terms of race, and each involves the exercise of judicial power in support of a process in which race becomes dispositive in terms of who can serve on a jury. Finally, each situation violates the plain language of MCR 2.511(F)(2).

## V. REMEDY

The Court of Appeals majority concluded, and plaintiffs argue, that any error here was harmless. We again respectfully disagree. In *Batson*, 476 US at 86-87, the Court held, without determining that the jury as composed was biased in any way, that the unlawful exclusion of a prospective juror on the basis of race requires reversal because it "violates a defendant's right to equal protection," "unconstitutionally discriminate[s] against the excluded juror," and "undermine[s] public confidence in the fairness of our system of justice." The Court likewise reversed convictions or judgments outright, without assessing the harmlessness of the *Batson* violations, in *Powers*, 499 US at 416; *Edmonson*, 500 US at 631; and *J E B*, 511 US at 146. Here, the trial court's efforts to balance the composition of a jury violated *Batson* because these efforts entailed taking race into account-- including, and necessarily excluding, with regard to jury duty, persons

16

on the basis of their pigmentation.[11]   We believe that the automatic reversal rule of *Batson* should also apply when there has been an unlawful inclusion of a juror as the result of a *Batson* violation by the trial court.[12]   Such a rule vindicates the equal protection guarantees of the United States Constitution, Am XIV, § 1 and Const 1963, art 1, § 2, while ensuring that jury selection is not infected in any way by racial considerations.[13]

Plaintiffs also argue that, even if the trial court erred by denying defendant's peremptory challenge, any error was not of a federal constitutional dimension, citing

---

[11] MCR 2.511(E)(1) states: "A juror peremptorily challenged *is excused* without cause."   (Emphasis added.)   The phrase "is excused" is mandatory language, not discretionary or permissive language.   Thus, absent a *Batson* violation, a trial court has no discretion to deny a party the exercise of one of its peremptory challenges and thereby to deny that party the right to have seated on his or her jury the person who stands next in the jury queue.

[12] *Bell* discussed whether the improper denial of a peremptory challenge is subject to harmless-error analysis.   The lead opinion stated in dictum that the improper denial of a peremptory challenge on a basis *other* than race is subject to that analysis.   *Bell*, 473 Mich at 293 (opinion by CORRIGAN, J.).   Justice KELLY argued in her dissent that automatic reversal should occur for the wrongful denial of a peremptory challenge, even if it does not constitute a *Batson* error.   *Id*. at 312-313 (KELLY, J., dissenting).   Justice CAVANAGH dissented on similar grounds.   *Id.* at 322 (CAVANAGH, J., dissenting).   This debate need not be further addressed today because here the wrongful denial was, in fact, based on race.   See, however, *Rivera v Illinois*, 556 US ___; 129 S Ct 1446, 1454-1456; 173 L Ed 2d 320 (2009) (unanimously rejecting an automatic-reversal rule where a trial court made a "one-time, good-faith" error "without more" in disallowing a peremptory challenge, but noting that "[s]tates are free to decide, as a matter of state law, [whether] a trial court's mistaken denial of a peremptory challenge is reversible error *per se*").

[13] The dissenting justices say that they "would not reverse" because they are not persuaded that defendant "suffered any injustice . . . ."   As explained, however, the wrongful denial of a peremptory challenge on the basis of race requires automatic reversal.   The "injustice" suffered is being denied a legal right on account of race.

17

*Rivera v Illinois*, 556 US ___; 129 S Ct 1446; 173 L Ed 2d 320 (2009).  In *Rivera*, the United States Supreme Court stated:

> If a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern.  Rather, it is a matter for the State to address under its own laws. . . .
>
>                          \*    \*    \*
>
> [T]he mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution. . . .
>
>                          \*    \*    \*
>
> [T]here is no suggestion here that the trial judge repeatedly or deliberately misapplied the law or acted in an arbitrary or irrational manner. . . .
>
>                          \*    \*    \*
>
> The automatic reversal precedents Rivera cites are inapposite. One set of cases involves *constitutional* errors concerning the qualification of the jury or judge.  In *Batson*, for example, we held that the unlawful exclusion of jurors based on race requires reversal because it "violates a defendant's right to equal protection," "unconstitutionally discriminate[s] against the excluded juror," and "undermine[s] public confidence in the fairness of our system of justice." . . .
>
> . . . Nothing in these decisions suggests that federal law renders state-court judgments void whenever there is a state-law defect in a tribunal's composition. Absent a federal constitutional violation, States retain the prerogative to decide whether such errors deprive a tribunal of its lawful authority and thus require automatic reversal. States are free to decide, as a matter of state law, that a trial court's mistaken denial of a peremptory challenge is reversible error *per se*.  [*Id.* at ___; 129 S Ct at 1453-1456.]

*Rivera* is inapplicable.  In *Rivera*, the Court held that a state court's "one-time, good-faith" error in disallowing a peremptory challenge did not "without more" require

reversal. *Id*. at ___; 129 S Ct at 1454-1455. The Court contrasted a judge's good-faith mistake with one arising because the judge deliberately misapplied the law or because the judge had acted in an arbitrary or irrational manner. In the case at bar, we can conclude neither that the trial court's error was made in good faith nor that a good-faith error occurred "without more." Rather, the trial court deliberately refused to follow the three-step process required under *Batson* because it thought that process required the court to "indulge" in "race baiting." And unlike the trial court in *Rivera,* which merely erred in good faith by finding a *Batson* error, the trial court in the instant case, despite never finding such an error in the first place, nonetheless arbitrarily proceeded as if it had. Furthermore, the court purposely rejected a court rule that incorporated established federal and state constitutional principles, and that rejection occurred in furtherance of the trial court's stated determination to take race explicitly into consideration in the jury selection process.[14]

## VI. JUDICIAL OBLIGATION

In this case, the trial judge (a) indicated that he was determined to attain a racially "representative" jury and "proportional representation" on the basis of race, notwithstanding explicit prohibitions in the law concerning discrimination in pursuit of a

---

[14] There is no question that peremptory challenges are not constitutionally required. And we agree that *Rivera* stands for the proposition that a good-faith erroneous denial of a peremptory challenge without more does not implicate the federal constitutional right to an impartial jury. However, what is perhaps most significant in *Rivera* is the implication that *Batson* errors are, in fact, "structural" and require "automatic" reversal.

racially representative jury or proportional representation on the basis of race; (b) indicated that he would not engage in the sort of "race baiting" he believed was compelled by the law even thought this might get him in "hot water" with the appellate courts; (c) indicated that he viewed as "dreadful" *Batson*'s threshold requirement of a judicial finding of racial bias motivating a peremptory challenge in the course of dispensing with that requirement and denying a peremptory challenge to which defendant was otherwise entitled by law; (d) indicated that if his view of the law did not prevail-- a view that he recognized as being contrary to the law of this state and that he proceeded to apply in this case-- he would "have to decide whether [he] can function as a judge any longer;" (e) indicated that he would continue to apply his own personal view of the law, rather than the law of this state, until "either removed from the bench by the disciplinary committee or ordered to have a new trial;" and (f) indicated that

> until either removed from the bench by the disciplinary committee or ordered to have a new trial, I am going to seek to have this proportional representation on the juries that hear cases in this court. I can't be clearer. I'm going to do it until I'm ordered not to do it and then when I'm ordered not to do it, then I'll have to decide what's next for me.

These comments, and the trial judge's attendant actions taken in conformity in denying defendant's peremptory challenge, establish a basis for concluding that this is the unusual case in which retrial should occur before a different judge. Moreover, we believe that these same comments and actions could supply a basis for the Judicial Tenure Commission to investigate whether judicial misconduct has occurred should it choose to

20

do so.[15] Michigan has a hierarchical judicial system, and trial courts are required to follow applicable rules, orders, and caselaw established by appellate courts, including the United States Supreme Court. This structure is essential to the orderly, uniform, and equal administration of justice. A trial court is not free to disregard rules, orders, and caselaw with which it disagrees or to become a law unto itself. Although a trial court is not required to agree with appellate rules, orders, and caselaw, as with litigants and all other citizens seeking to comply with the law, the court is required in good faith to follow

---

[15] While a trial court's "erroneous decision . . . made in good faith and with due diligence is not judicial misconduct," MCR 9.203(B), an intentional refusal to follow the law or a court rule can be judicial misconduct. See, e.g., *In re Hague*, 412 Mich 532, 547-554; 315 NW2d 524 (1982), where this Court stated:

> . . . Judge Hague knew exactly what the superintending control orders forbade him to do, and did so anyway. The record reveals that the respondent made no serious good-faith attempt to obey the various orders from superior courts, either the circuit court or the Court of Appeals. . . .

> \* \* \*

> The maintenance of public confidence in the integrity of the judiciary required Judge Hague to avoid even the *appearance* of defiance of valid judicial orders. . . .

> \* \* \*

> It seems clear beyond peradventure that, in this case, Judge Hague's intentional disobedience of valid orders constitutes judicial misconduct. Public confidence in the integrity and impartiality of the judiciary can only be eroded by the spectacle of a judge refusing to follow the law. . . .

> \* \* \*

> . . . A judge who may disagree with the appellate authority must, nevertheless, lay aside his own opinion of the validity of the law and dispose of the cases before him in accordance with the precedent.

21

those rules, orders, and caselaw.[16]   Judges, like all other persons, are required to act *within* the law.  This is the essence of the rule of law, and this is the essence of the equal rule of the law.  These are obligations that apply equally to this Court with regard to the federal decisions of the United States Supreme Court and to our Court of Appeals.[17]

## VII.  CONCLUSION

A trial court may not deny a party a proper peremptory challenge "for the purpose of achieving what the court believes to be a balanced, proportionate, or representative jury . . . ."  MCR 2.511(F)(2).  Rather, jurors must be selected pursuant to criteria that do not take race into consideration, with each juror being chosen indifferently with respect to race.  Whether for the purpose of including or excluding a particular juror, taking race into account violates the equal protection guarantees of both the federal and state

---

[16] An order entered by a court with proper jurisdiction must be obeyed-- even if the order is clearly incorrect.  *State Bar of Mich v Cramer*, 399 Mich 116, 125; 249 NW2d 1 (1976) ("[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.") (citations and quotation marks omitted); *City of Troy v Holcomb*, 362 Mich 163, 169; 106 NW2d 762 (1961) ("No citizen, having had certain activities enjoined, may resume them upon his individual determination that the injunction is for some reason no longer applicable . . . ."); *Lester v Oakland Co Sheriff*, 84 Mich App 689, 697-698; 270 NW2d 493 (1978) (acknowledging that while the "order was improperly entered, it must still be obeyed until vacated by appropriate judicial action").

[17] See *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004) ("[S]tate courts are bound by the decisions of the United States Supreme Court construing federal law . . . .").  It is the Supreme Court's obligation to overrule or modify caselaw, and until it takes such action, the Court of Appeals and all lower courts are bound by that authority.  *Boyd v W G Wade Shows*, 443 Mich 515, 523; 505 NW2d 544 (1993), overruled on other grounds by *Karaczewski v Farbman Stein & Co*, 478 Mich 28; 732 NW2d 56 (2007).

constitutions, US Const, Am XIV, § 1 and Const 1963, art 1, § 2, and MCR 2.511(F)(2). The judgment of the Court of Appeals is reversed, and this case is remanded for a new trial on damages only before a different judge.

KELLY, C.J., and CAVANAGH, CORRIGAN, and YOUNG, JJ., concurred with MARKMAN, J.

S T A T E   O F   M I C H I G A N

SUPREME COURT

ANTHONY PELLEGRINO, Individually
and as Personal Representative of the Estate
of SHIRLEY ANN PELLEGRINO,

      Plaintiffs-Appellees,

v                                       No. 137111

AMPCO SYSTEM PARKING,

      Defendant-Appellant.

_____

WEAVER, J. (*dissenting*).

I dissent. I would not reverse and remand this case because I believe that leave to appeal was improvidently granted. I am not persuaded that the decision of the Court of Appeals was clearly erroneous or that defendant has suffered any injustice in this case.

Further, I do not support the majority's discussion regarding possible referral of the trial judge to the Judicial Tenure Commission.

HATHAWAY, J., concurred with WEAVER, J.