*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAWN MARIE DIXON-BEY,

Defendant-Appellant.

FOR PUBLICATION
February 1, 2022
9:00 a.m.

No. 354866
Jackson Circuit Court
LC No. 15-004596-FC

Before: MARKEY, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J.

Defendant, Dawn Marie Dixon-Bey, appeals as of right her sentence for second-degree murder, MCL 750.317. This case returns to this Court following our decision vacating defendant's first sentence and ordering resentencing. See *People v Dixon-Bey*, 321 Mich App 490; 909 NW2d 458 (2017). We again vacate defendant's sentence and remand for resentencing before a different judge.

## I. BACKGROUND

In defendant's prior appeal, this Court set forth the following background facts:

> Defendant, Dawn Marie Dixon-Bey, was arrested after admittedly stabbing her boyfriend, Gregory Stack (the victim), to death in their home on February 14, 2015. At first, she claimed that the victim must have been stabbed during an altercation with others before returning to their home. Later, however, defendant admitted that she was the person who stabbed the victim but claimed that she had only done so in self-defense. She was subsequently charged with first-degree murder, MCL 750.316, and, after an eight-day jury trial, was found guilty of second-degree murder, MCL 750.317. [*Dixon-Bey*, 321 Mich App at 494-495.]

Defendant's sentencing guidelines minimum range was 12 to 20 years, but the trial court imposed a sentence of 35 to 70 years in prison.

-1-

On appeal, this Court affirmed defendant's conviction but vacated her sentence and remanded for resentencing. *Dixon-Bey*, 321 Mich App at 495. We held that the trial court's upward departure of fifteen years above the top of defendant's guidelines range violated the principle of proportionality, the trial court erred by failing to adequately explain why its sentence was more proportionate than a guidelines sentence, and the trial court erred by concluding that defendant had a noteworthy criminal history on this record. *Id*. at 523-526. We also held that none of the factors discussed by the trial court provided a reasonable basis for a departure sentence, because those factors were either accounted for by the sentencing guidelines or inconsistent with the scoring of the guidelines. *Id*. at 526-527. We noted that we were "highly skeptical of a trial court's decision to sentence a defendant convicted of second-degree murder as though the murder were premeditated."[1] *Id*. at 528. We observed that many factors relied upon by the trial court were neither special nor relevant. *Id*. at 529. At defendant's resentencing hearing, the trial court again acknowledged that defendant's minimum sentencing guidelines were 12 to 20 years. The trial court resentenced her to 30 to 70 years' incarceration.

## II. STANDARDS OF REVIEW AND PRINCIPLES OF LAW

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A trial court abuses its sentencing discretion when the sentence imposed by the trial court is disproportionate to the seriousness of the circumstances involving the offense and the offender. *Id*. at 459-460. A number of factors have been deemed appropriate to consider when determining the proportionality of a departure sentence, including the seriousness of the offense; factors not accounted for by the guidelines, such as the prior relationship between the victim and the defendant, a lack of remorse, or a low potential for rehabilitation; and factors accounted for by the guidelines but given inadequate weight under the circumstances. *People v Houston*, 448 Mich 312, 321-325; 532 NW2d 508 (1995). "[D]epartures are appropriate [when] the guidelines do not adequately account for important factors legitimately considered at sentencing." *People v Milbourn*, 435 Mich 630, 657; 461 NW2d 1 (1990). The existence of a departure factor is a factual question reviewed on appeal for clear error. See *People v Babcock*, 469 Mich 247, 264; 666 NW2d 231 (2003).

The interpretation of court rules and statutes "is a question of law that we review de novo." *People v Petit*, 466 Mich 624, 627; 648 NW2d 193 (2002). When a defendant argues that a trial court denied him or her the right to allocate at sentencing in violation of MCR 6.425, this Court also reviews "de novo the scope and applicability of the common-law right to allocate, also a question of law." *People v Petty*, 469 Mich 108, 113; 665 NW2d 443 (2003). Trial courts must strictly comply with a defendant's right to allocution. *People v Kammeraad*, 307 Mich App 98, 149; 858 NW2d 490 (2014). Claims alleging a violation of constitutional due process are reviewed

---

[1] *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019), cert den sub nom *Michigan v Beck*, 140 S Ct 1243 (2020), had not yet been decided when this Court issued its prior opinion.

de novo; however, any underlying factual findings are reviewed for clear error. *People v Brown*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 352001), slip op at p 4.

## III. PROPORTIONALITY

After this Court's opinion in defendant's prior appeal, but before the trial court held the resentencing hearing, our Supreme Court decided *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019), cert den sub nom *Michigan v Beck*, 140 S Ct 1243 (2020). *Beck* held that, unlike uncharged conduct, a trial court is forbidden from using acquitted conduct when crafting a sentence. *Id*. at 609, 629. Our Supreme Court explicitly held that it violates a defendant's right to due process when a judge increases a defendant's sentence "because the judge believes that the defendant really committed one or more of the crimes on which the jury acquitted." *Id*. at 609. As this Court has observed, there may be situations under which it is not obvious what conduct should be considered "acquitted." *Brown*, ___ Mich App ___, slip op at pp 5-6. However, this is not one of those situations. The jury acquitted defendant of first-degree murder and convicted her of second-degree murder. It could not be plainer that the jury acquitted defendant of first-degree murder because it found that the element of premeditation was not established. Nevertheless, the trial court, in its own words, "g[ave] [defendant] an additional 10 years in prison for a cold blooded, premeditated stabbing of a victim of this community." The trial court's blatant refusal to follow *Beck* persisted despite both attorneys advising the trial court that *Beck* prohibited the use of acquitted conduct when crafting a sentence.[2]

No law or rule obligates courts or individual judges to agree with decisions and opinions from higher courts. Nor is there any law or rule obligating courts or judges to pretend to agree with decisions and opinions from higher courts. However, courts are obligated to *comply* with decisions and opinions from higher courts. We remind the trial court that:

> Michigan has a hierarchical judicial system, and trial courts are required to follow applicable rules, orders, and caselaw established by appellate courts, including the United States Supreme Court. This structure is essential to the orderly, uniform, and equal administration of justice. A trial court is not free to disregard rules, orders, and caselaw with which it disagrees or to become a law unto itself. Although a trial court is not required to agree with appellate rules, orders, and caselaw, as with litigants and all other citizens seeking to comply with the law, the court is required in good faith to follow those rules, orders, and caselaw. Judges, like all other persons, are required to act *within* the law. This is the essence of the rule of law, and this is the essence of the equal rule of the law. [*Pellegrino v AMPCO Sys Parking*, 486 Mich 330, 352-354; 785 NW2d 45 (2010).]

---

[2] After the trial court stated its view that the murder was premeditated, the prosecutor stated:

> Your Honor, you have the right to believe that it was first degree murder. But the Michigan Supreme Court has, for better or worse, ruled that you're not allowed to consider that in sentencing. That's what the bottom line is.

To be clear, lower courts must follow decisions of higher courts even if they believe the higher court's decision was wrongly decided or has become obsolete. *Paige v Sterling Hts*, 476 Mich 495, 524; 720 NW2d 219 (2006). If a trial judge is unable to follow the law as determined by a higher appellate court, the trial judge is in the wrong line of work. See Michigan Code of Judicial Conduct, Canon 2; Canon 3(A)(1); see also *Pellegrino*, 486 Mich at 352.

The prosecution argues that we should ignore *Beck* and instead follow *United States v Watts*, 519 US 148, 157; 117 S Ct 663; 136 L Ed 554 (1997), in which the United States Supreme Court held that a federal sentencing court, applying the federal sentencing guidelines, may conclude by a preponderance of the evidence that a defendant committed a crime even though acquitted of the conduct by a jury. However, *Beck* binds us no less than it does the trial court. See, e.g., *People v Mitchell*, 428 Mich 364, 369-370; 408 NW2d 798 (1987). In any event, we do not agree that *Beck* was wrongly decided, and we would have no reason to express such an opinion here. In *Watts*, the United States Supreme Court analyzed whether 18 USC § 3661 and the United States Sentencing Guidelines permitted sentencing courts to consider acquitted conduct. *Watts*, 519 US at 149-153. As our Supreme Court observed, *Watts* noted that such consideration did not violate the Fifth Amendment, but *Watts* never addressed the Fourteenth Amendment right to due process. *Beck*, 504 Mich at 615. Moreover, the United States Supreme Court later regarded *Watts* as having " 'presented a very narrow question' " without " 'the benefit of full briefing or oral argument,' " and as a consequence *Watts* failed to consider whether reliance upon acquitted conduct violated due process. *Id*. at 624-625, quoting *United States v Booker*, 543 US 220, 240 n 4; 125 S Ct 738; 160 L Ed 2d 621 (2005). In short, *Watts* does not conflict with *Beck*, and our Supreme Court has already given *Watts* ample consideration.

The trial court's upward sentence departure based upon its finding of premeditation and deliberation, contrary to the jury's verdict, was an abuse of discretion and a willful violation of controlling precedent from our Supreme Court. We therefore need not consider the trial court's other stated justifications for imposing a departure sentence.[3]

## IV. RIGHT TO ALLOCUTION

Defendant further argues that she was deprived of her right to allocution. We agree.

At the resentencing, after both attorneys informed the trial court that it was not permitted to factor its belief that defendant committed first-degree murder into sentencing, the following exchange occurred:

> *The Court*. Ms. Bey, is there anything that you'd like to tell the Court for further consideration at your resentencing?

---

[3] This Court has not previously held, and we do not now hold, that an upward departure from defendant's sentencing guidelines would necessarily constitute an abuse of discretion.

*Defendant.* Well, since I've been here I've tried to do all – get into all the programming I can as far as like anger management, grief counseling. All my programming for paroling and all of that I can't get into because of the years I have.

I got into – my jobbing is like for visual aid, wheelchair aid, things like that to help other people out because of things that I've done. I take responsibility for what I did. I can't stress enough how –

*The Court.* Well, let me ask you, do you think you took responsibility for it when you were sentenced?

*Defendant.* I did take responsibility. I took a life that didn't belong to me. I took a life from his children, from his family, from everybody that knew him. And that is something that I'm going to have to deal with for the rest of my life, that I took a life that didn't belong to me. I should not have took [sic] that life.

I should – that's my burden. And –

*The Court.* And how do you think you took his life?

*Defendant.* What do you mean?

*Defense Counsel.* Your Honor –

*The Court.* No, no –

*Defense Counsel.* Your Honor, I'm not trying –

*The Court.* You know, counsel –

*Defendant.* I took –

*The Court.* Go ahead, I'll just comment on the facts myself.

*Defendant.* I killed him.

*The Court.* Yeah, with two stab wounds directly to the heart, right? That's not in dispute.

*Defense Counsel.* Your Honor, can I place something on the record, I want to make a record?

*The Court.* Sure, go ahead, counsel.

*Defense Counsel.* Yeah, I would object. I don't think this is appropriate to rehash all of this. And we're not –

*The Court.* Okay. I'm the one that's answering and asking a couple –

*[Multiple speakers]*

*The Court.* – questions to your client who wants to testify, all right? And she tells me she's remorseful and I asked her, how did you kill him. I mean, I sat as the trial Judge, I'm intimately aware how she killed him.

*Defense Counsel.* Again, I just put my objection on the record. It's your courtroom, your Honor, I know that position. Obviously, you will make the decisions and call the shots, I'm just placing an objection on the record.

*The Court.* Your objection is so noted, counsel. Let's move on.

Anything further, Ms. Bey?

*Defendant.* No, sir.

*The Court.* All right. Thank you.

Thereafter, the prosecutor again noted that the trial court was not permitted to consider defendant to have committed first-degree murder, but it urged the trial court to consider other reasons for departing upwards from the sentencing guidelines.

As an initial matter, allocution is not testimony. Defendant was not sworn in, and even if she had been sworn in, it would not have been the trial court's role to conduct what was effectively a cross-examination. Furthermore, the trial court actively prevented defendant from expressing remorse and responsibility after the crime by focusing on the crime itself—and its impermissible interpretation of that crime. The trial court's commentary indicated that it wished to provide its own testimony, seemingly in the pursuit of a sentencing decision it had already decided upon before allocution and contrary to the law as explained by both attorneys.

The trial court was, of course, not under any obligation to accept anything defendant said, and it would have been appropriate for the trial court to state as much when imposing sentence. See *People v Westbrook*, 188 Mich App 615, 616-617; 470 NW2d 495 (1991). Furthermore, a single interruption, where a defendant otherwise receives a reasonable opportunity to speak, does not deprive the defendant of the right to allocution. *People v Reeves*, 143 Mich App 105, 107; 371 NW2d 488 (1985). It would also have been appropriate for the court to interrupt for the purpose of seeking clarification of a defendant's statements. See *People v Howell*, 168 Mich App 227, 236-237; 423 NW2d 629 (1988). However, allocution is the *defendant's* opportunity to *address the court*, not the court's opportunity to conduct an interrogation or deliver a lecture. See *People v Bailey*, 330 Mich App 41, 67-68; 944 NW2d 370 (2019). The trial court may deliver a lecture or express its disbelief afterwards, during sentencing. During allocution, it must permit the defendant a meaningful opportunity to speak.

Michigan Code of Judicial Conduct, Canon 3(A)(12) states that "a judge should avoid interruptions of counsel in their arguments except to clarify their positions, and should not be tempted to the unnecessary display of learning or a premature judgment." The same principle applies to a defendant's allocution. Defendant declined to speak further, following the trial court's dismissive response to her attorney's objection to the trial court grilling defendant instead of

listening to her. Under the circumstances, that can hardly be construed as an expression of satisfaction; it is far more likely to have been the result of intimidation in light of the fact that the trial court had abandoned its role as an impartial magistrate and instead usurped the role of prosecutor. See *People v Redfern*, 71 Mich App 452, 456-457; 248 NW2d 582 (1976).[4] Defendant would reasonably have wished to avoid incurring even further displeasure from the trial court. *Id*. Under the circumstances, it is clear defendant was offered only an illusory and superficial opportunity for allocution. The distinction between a conversation and an argument may not always be clear, but the trial court plainly violated defendant's rights here.

## V. REMAND BEFORE A DIFFERENT JUDGE

Defendant finally argues that resentencing should be assigned to a different trial court judge. We agree.

When a case is remanded for resentencing, the reviewing court may determine that resentencing be carried out by a different judge. *People v Evans*, 156 Mich App 68, 71-72; 401 NW2d 312 (1986); see also *People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997). In determining whether to reassign, this Court examines three factors:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*Evans*, 156 Mich App at 72 (quotation marks and citation omitted).]

The trial court's abandonment of impartiality and unwillingness to follow the law would be bad enough, but the trial court also went so far as to state on the record, "And they want another Judge to do it again and maybe they can convince some Judge that, oh, I should get only 12 years for a second-degree murder[5] when I stabbed somebody in the heart twice." This statement further reflects the inability of the trial court to conform its rulings to the law, and the appearance of justice can only be preserved by reassigning this case on remand. Furthermore, the trial court's conduct

---

[4] In *Redfern*, at issue was whether the trial court's improper questioning of the defendant deprived the defendant of a fair trial by prejudicing the jury, which is not a concern at sentencing. However, *Redfern* nevertheless illustrates the point that a trial court may overstep its bounds by going beyond merely seeking to clarify ambiguous statements. *Redfern*, 71 Mich App at 457.

[5] The trial court apparently failed to recognize that it was not limited to a 12-year minimum sentence: it could have sentenced defendant to 20 years and remained within the guidelines, drastically curtailing appellate review. See *People v Anderson*, 322 Mich App 622, 636; 912 NW2d 607 (2018). Furthermore, although we express no opinion under the circumstances as to their substantive merit, the prosecutor argued to the trial court that there were other possible grounds for an upwards departure that would not have contravened *Beck*.

and statements may warrant investigation by the Judicial Tenure Commission. See *Pellegrino*, 486 Mich at 352.

Defendant's sentence is vacated, and this matter is remanded for resentencing before a different judge. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Jane E. Markey
/s/ Douglas B. Shapiro