# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## PEOPLE v YARBROUGH

Docket No. 161513. Argued January 11, 2023 (Calendar No. 1). Decided July 14, 2023.

Robert Yarbrough, Jr., was convicted following a jury trial in the Wayne Circuit Court of kidnapping, MCL 750.349; assault with intent to do great bodily harm, MCL 750.89; felonious assault, MCL 750.82; and three counts of first-degree criminal sexual conduct, MCL 750.520b. During voir dire, the trial court, Dalton A. Roberson, J., informed counsel for both parties that neither party would be allowed to exercise peremptory challenges to excuse any prospective jurors other than newly seated prospective jurors who had replaced those prospective jurors who had been previously dismissed; that is, the parties were not permitted to peremptorily challenge any seated juror on whom the party had already passed. Defense counsel objected to the court's policy and requested a new venire, but the court overruled counsel's objection and a jury was empaneled. Defendant appealed his convictions in the Court of Appeals (MURRAY, C.J., and RONAYNE KRAUSE and TUKEL, JJ.), which affirmed in an unpublished per curiam opinion. Defendant sought leave to appeal in the Michigan Supreme Court, which initially held defendant's application for leave to appeal in abeyance pending its decision in *People v Kabongo*, 507 Mich 78 (2021). Following its decision in *Kabongo*, the Court granted defendant's application. 508 Mich 985 (2021).

In an opinion by Justice BERNSTEIN, joined by Justices CAVANAGH, WELCH, and BOLDEN, the Supreme Court *held*:

MCL 768.12 and MCL 768.13 mandate that a defendant be permitted to peremptorily challenge prospective jurors, and MCR 2.511 governs the exercise of peremptory challenges. In this case, the trial court's decision to restrict the parties' peremptory challenges to newly seated prospective jurors ran afoul of the statutes and MCR 2.511. Ordinarily, in cases of preserved, nonconstitutional error, reversal is warranted only if, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome-determinative. However, because the right to exercise peremptory challenges would be virtually eliminated by the application of that standard, automatic reversal is the appropriate remedy for the erroneous denial of a defendant's peremptory challenge when the error was preserved and no curative action was taken.

1. Under MCL 768.12 and MCL 768.13, a criminal defendant's constitutional right to an impartial jury is protected, in part, by mandating that the defendant be permitted to peremptorily challenge a certain number of prospective jurors. MCR 2.511(E) and (G) establish how peremptory challenges are to be exercised. Under MCR 2.511, a pass is not counted as a challenge but is a waiver of further challenge to the panel as constituted at that time; if the composition of the jury panel changes, new jurors and previously seated jurors are subject to challenge. Accordingly, the trial court's decision to restrict the parties' peremptory challenges to newly seated prospective jurors ran afoul of the statutes and MCR 2.511. The pertinent question was which standard of review applied to determine whether defendant was entitled to relief.

2. Ordinarily, in cases of preserved, nonconstitutional error, reversal is warranted only if, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome-determinative. Defendant, however, argued that the trial court's error in precluding peremptory challenges defied a harmless-error analysis. In *People v Miller*, 411 Mich 321 (1981), this Court held that noncompliance with a court rule that explained the process for selecting a jury and exercising challenges to potential jurors was an error requiring automatic reversal. Thus, Michigan caselaw has recognized that the appropriate remedy for the erroneous denial of a peremptory challenge is automatic reversal, even though this right is not constitutionally mandated. A majority of this Court later held in *People v Bell*, 473 Mich 275 (2005), that no peremptory challenges had been improperly denied in that case and concluded that the Court need not address whether a denial of a peremptory challenge was subject to automatic reversal. Nevertheless, Part IV of the lead opinion in *Bell* purported to overrule *Miller* and hold, without performing a harmless-error analysis, that the denial of a statutory peremptory challenge was subject to harmless-error review. This portion of *Bell* was not necessary to the resolution of that case and thus was merely dictum; further, only three justices signed Part IV of the lead opinion, so it failed to garner a majority. Therefore, *Bell* was not controlling in this case. In *Kabongo*, the Court addressed whether the trial court's erroneous ruling on an objection to a peremptory challenge under *Batson v Kentucky*, 476 US 79 (1986), was a structural error requiring automatic reversal or was subject to harmless-error review. In *Kabongo*, the decision of the Court of Appeals was affirmed by equal division, so neither the opinion for affirmance nor the opinion for reversal had the weight of precedent. It was appropriate, therefore, to reconsider the question raised in *Kabongo* in this case. Contrary to the assumption of the opinion for affirmance in *Kabongo*, an error need not involve a constitutional violation to warrant the application of an automatic-reversal rule. The appropriate remedy for an error is determined not by the source of the legal principle, but by the impact of the error and its redressability. The error in this case demonstrated the unworkability of the harmless-error standard in the context of peremptory challenges. The trial court's policy limited defendant's ability to use peremptory challenges throughout the voir dire process, which, in turn, limited defendant's ability to strategically consider the final composition of the jury. It would have been an exercise in futility to attempt to establish that the error was likely outcome-determinative, given that any attempt to assess how a trial would have differed with a different jury composition would be purely speculative. Application of the harmless-error analysis in cases like this one would effectively erase the right of criminal defendants to challenge potential jurors, and the lack of a remedy would be a miscarriage of justice for purposes of MCL 769.26. Peremptory challenges remain an important tool for maintaining fair trials and must not be hampered in the manner that the trial court mandated here. The trial court's policy cut short defendant's ability to engage in the

ongoing, strategic monitoring of prospective jurors for signs of bias, contrary to the mandate of MCR 2.511. Because the right to exercise peremptory challenges would be virtually eliminated by application of the harmless-error standard, automatic reversal is the appropriate remedy for the erroneous denial of a defendant's peremptory challenge when the error was preserved and no curative action was taken.

Reversed and remanded for a new trial.

Justice ZAHRA, joined by Chief Justice CLEMENT and Justice VIVIANO, dissenting, disagreed with the majority opinion that the trial court's error in denying the parties their rights to exercise peremptory challenges in accordance with MCR 2.511 was structural error subject to automatic reversal. Instead, he concluded that the error was subject to harmless-error review because it was not of constitutional magnitude. He would also have affirmed defendant's convictions because defendant did not show that the error was outcome-determinative. The majority opinion ignored the longstanding principle that a structural error is a fundamental constitutional error and that the purpose of the structural-error doctrine is to ensure insistence on basic constitutional guarantees that should define the framework of a criminal trial. Peremptory challenges are not of constitutional dimension, and the majority opinion's assertion that an error need not involve a constitutional violation to warrant application of the automatic-reversal rule lacked support. Justice ZAHRA noted that the United States Supreme Court has explained that peremptory challenges historically reinforced a defendant's right to an impartial jury but that such challenges are auxiliary and not of federal constitutional dimension. Federal courts and many states have rejected automatic reversal as a remedy for an error relating to a peremptory challenge and have instead embraced the rule that no substantial right is impaired so long as the jury that sits is impartial. Additionally, the United States Supreme Court signaled approval of the use of harmless-error review for the denial of peremptory challenges in *Rivera v Illinois*, 566 US 148 (2009), demonstrating how courts have increasingly retreated from viewing peremptory challenges as a significant right and the erosion of support for the position espoused by the majority opinion. Contrary to the view of the majority opinion, *Kabongo* was distinguishable because that case involved a potential error under *Batson v Kentucky*, 476 US 79 (1986), which, if shown, was a constitutional error that was not subject to harmless-error review and required automatic reversal. In this case, the error involved only the violation of a court rule. Therefore, there was no significant, let alone constitutional, basis to require automatic reversal. Justice ZAHRA would have found the error harmless and would not have disturbed the jury's verdict.

**Michigan Supreme Court**
**Lansing, Michigan**

OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 14, 2023

STATE OF MICHIGAN

SUPREME COURT

THE PEOPLE OF THE STATE OF
MICHIGAN,

        Plaintiff-Appellee,

v                                          No. 161513

ROBERT YARBROUGH, JR.,

        Defendant-Appellant.

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

      This case grants us the opportunity to revisit a question left unresolved in *People v Kabongo*, 507 Mich 78; 968 NW2d 264 (2021)—whether the erroneous denial or deprivation of a criminal defendant's peremptory strike of a prospective juror constitutes a structural error warranting automatic reversal, or whether it is instead subject to harmless-error review. This Court, split by equal division in *Kabongo*, was unable to reach a

majority conclusion on that question. Today, we conclude that such an error requires automatic reversal.

## I. FACTUAL AND PROCEDURAL HISTORY

Defendant was charged with kidnapping, MCL 750.349; assault with intent to do great bodily harm, MCL 750.84; felonious assault, MCL 750.82; and three counts of criminal sexual conduct in the first degree, MCL 750.520b. Voir dire in defendant's jury trial began on November 26, 2018, in the Wayne Circuit Court. The court explained the process to the jury panel, or venire, and initiated questioning of the prospective jurors, questioning fifteen and excusing one for cause before allowing the prosecution to ask questions. Following the prosecution's questioning, defense counsel was permitted to question the prospective jurors. After an off-the-record sidebar conversation, the prosecution exercised its first peremptory challenges. Once again, the court questioned the prospective jurors, followed by the prosecution and then defense counsel. After this second round of questioning, defense counsel issued peremptory challenges of its own. This cycle repeated, with additional prospective jurors being dismissed both for cause and pursuant to peremptory challenges. Eventually, a full jury was selected. Outside the presence of the jury, defense counsel informed the court that she wished to make a statement on the record. The following exchange between defense counsel and the court, addressing restrictions the court had placed on the peremptory-challenge process, ensued:

> [*Defense counsel*]: Judge, I just want the record to reflect, which the Court gave us permission to address in a separate matter. The Court brought us to sidebar and indicated as we were conducting voir dire in this case that neither party, as a part of the Court's rule, would be allowed to exercise peremptory challenges to excuse any Members of the Jury other than new members who were replaced.

2

As a result of that, and I made a contemporaneous objection, but obviously we were not going to deal with that in front of the jury.

I would argue you, your Honor, that the failure to allow ongoing peremptory challenges is governed by both court rule and statute[,] specifically MCL 768.13 and court rule MCR 6.412.

*The Court*: What's your first rule?

[*Defense Counsel*]: [MCL] 768.13 in which there's a discussion, your Honor, about peremptories and they're [sic] ability to be ongoing objections.

MCR. 2.511(G) provides [in] pertinent part:

> After jurors have been seated in the jurors' box and a challenge for cause is sustained or a peremptory challenge or challenges are exercised, another juror or other jurors may be selected and examined. Such jurors are subject to challenge as are previously seated jurors.

The most recent case, your Honor, concerning this matter is an unpublished opinion which is *People v London Deshann Harris*. I can provide copies of these matters as well as the court rule and statute, which is Court of Appeals No. 325356 in which the Court determined that it was, in fact, reversible error to fail—that it was error, not of a constitutional magnitude.

There was an earlier Supreme Court case that had said that it was subject to harmless error analysis which is *People v Schmidt*.

But in that case, they opine that the practice and procedure of not allowing ongoing peremptory challenges with respect to initial venire or replaced jurors deprive the defendant of his opportunity to select and participate in the voir dire process. Obviously, as the Court is aware while the questions are simply being directed to new people that are on the panel, the process is ongoing and people are reacting—

*The Court*: Well, you've made your argument, counsel.

[*Defense Counsel*]: —defendants are reacting. And it's very important that the decision while processing peremptories or whatever is an ongoing process, not precluded by the actual acts or questions. More importantly defendant—

3

*The Court*: What are you asking for? What are you asking for, counsel?

[*Defense Counsel*]: At this time, your Honor, I think the remedy would be a new venire based upon the fact that I would have made challenges.

*The Court*: You indicated you were satisfied with the jury.

[*Defense Counsel*]: I was satisfied pursuant to compliance with the Court's direction, not satisfied as to the—

*The Court*: Okay. All right. Take it up with the Court of Appeals.

Defendant went on to be tried by the empaneled jury and was convicted as charged. Defendant was sentenced to serve 7 to 15 years in prison for the felonious-assault conviction and 40 to 60 years for each of the remaining convictions.

Defendant challenged the trial court's restriction on peremptory challenges in the Court of Appeals. The Court of Appeals affirmed in an unpublished per curiam opinion, acknowledging that the trial court abused its discretion by restricting peremptory challenges to newly seated prospective jurors who replaced a dismissed juror but holding that the practice did not warrant automatic reversal. Instead, the Court of Appeals held that it was subject to review for harmless error and that defendant had not established the prejudice necessary for relief. *People v Yarbrough*, unpublished per curiam opinion of the Court of Appeals, issued April 30, 2020 (Docket No. 347400). We granted leave on this issue. *People v Yarbrough*, 508 Mich 985 (2021).

## II. ANALYSIS

### A. PEREMPTORY CHALLENGES

The Michigan Legislature has elected to protect a criminal defendant's constitutional right to an impartial jury by mandating that a defendant be permitted to

4

peremptorily challenge prospective jurors, with the number of challenges dependent upon the maximum punishment for the offense. See MCL 768.12 and MCL 768.13. Peremptory challenges are further governed by MCR 2.511, which provides in relevant part:

> (E) Peremptory Challenges.
>
> * * *
>
> (3) Peremptory challenges must be exercised in the following manner:
>
> (a) First the plaintiff and then the defendant may exercise one or more peremptory challenges until each party successively waives further peremptory challenges or all the challenges have been exercised, at which point jury selection is complete.
>
> (b) A "pass" is not counted as a challenge but is a waiver of further challenge to the panel as constituted at that time.
>
> (c) If a party has exhausted all peremptory challenges and another party has remaining challenges, that party may continue to exercise their remaining peremptory challenges until such challenges are exhausted.
>
> * * *
>
> (G) Replacement of Challenged Jurors. After the jurors have been seated in the jurors' box and a challenge for cause is sustained or a peremptory challenge or challenges exercised, another juror or other jurors must be selected and examined. Such jurors are subject to challenge as are previously seated jurors.

As the Court of Appeals concluded below, it is readily apparent that the trial court's practice of restricting peremptory challenges to newly seated prospective jurors ran afoul of the statute and court rule.[1] A trial court's conduct of voir dire is reviewed for an abuse

---

[1] We disagree with Justice ZAHRA's contention that "MCR 2.511(G) provides more than the plain language of MCL 768.13 contemplates by allowing for backstrikes." *Post* at 17. By providing a right for a certain number of peremptory challenges without limiting this right to newly seated jurors, MCL 768.13 arguably mandates that this right applies to all prospective jurors. At minimum, MCL 768.13 is silent on the issue, while MCR 2.511(G)

5

of discretion. See *People v Tyburski*, 445 Mich 606, 619; 518 NW2d 441 (1994). The legal error here necessarily means that the trial court abused its discretion by adopting and enforcing this practice. *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013). The parties do not dispute this.

## B. STANDARD OF REVIEW

Because there is no dispute that the trial court erred, we must ask what standard of review applies to determine whether defendant is entitled to relief. Ordinarily, in the case of preserved, nonconstitutional error, reversal is only warranted if "after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation marks and citation omitted). The *Lukity* rule arose out of this Court's grappling with MCL 769.26, which provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

Defendant contends that the trial court's error in precluding peremptory challenges defies harmless-error analysis under the standard of *Lukity*.

operates as a valid exercise of this Court's constitutional authority to provide rules of "practice and procedure" as to the manner for exercising the statutory right to a peremptory challenge. See Const 1963, art 6, § 5. Even if our peremptory-challenge procedure were solely a creature of the court rules, an automatic-reversal rule would still be warranted for the reasons provided later in this opinion. See MCR 2.613(A) (stating that an error under the court rules shall result in a new trial if allowing the verdict to stand "appears to the court inconsistent with substantial justice.").

6

C. THE APPROPRIATE REMEDY FOR ERRONEOUS DENIALS OF PEREMPTORY CHALLENGES

Peremptory challenges have a long history in Michigan, as does the debate concerning which standard of review applies to an assertion that such challenges were erroneously denied. In *People v Gratz*, 35 Mich App 42; 192 NW2d 304 (1971), the Court of Appeals was asked how to remedy a trial court's failure to comply with a statute establishing requirements for jury selection that was repealed after the defendant's trial but before his appeal. The Court of Appeals concluded that the defendant did not need to show prejudice to be granted relief, explaining that the right to have a jury selected in the manner required by the statute was a "substantial right [that is] entitled to judicial protection and enforcement" and that if the process does not take place as required, "there is no opportunity except upon a challenge to the array to oversee the process and to correct the error." *Id*. at 46. The *Gratz* panel explained:

> To require a defendant, after conviction, to prove prejudice would be to impose on him an impossible burden of proof and, in effect, to deny enforcement of his statutory right. It would be virtually impossible in almost any case to demonstrate that prejudice resulted from an infringement of the right to have jurors selected in the manner prescribed by the statute.
>
> The defendant's guilt or innocence and the weight of the evidence are clearly beside the point. While jurors generally bring in a verdict portended by the weight of the evidence, experience teaches us that on occasion they bring in an unanticipated verdict to the dismay and mystification of both judge and counsel. [*Id*. at 47.]

Ten years later, this Court adopted the same approach in the peremptory-challenge context. In *People v Miller*, 411 Mich 321, 326; 307 NW2d 335 (1981), abrogation recognized by *People v Bell*, 473 Mich 275, 293; 702 NW2d 128 (2005) (opinion by CORRIGAN, J.), corrected on reh 474 Mich 1201 (2005), this Court held that noncompliance

7

with a court rule explaining the process for selecting a jury and exercising challenges to potential jurors was an error requiring automatic reversal. This Court was particularly attuned to the fact that prejudice could not be shown in that context, explaining:

> [T]here is nothing in this record from which one could affirmatively find prejudice to the defendants from the selection process. However, given the fundamental nature of the right to trial by an impartial jury, and the inherent difficulty of evaluating such claims, a requirement that a defendant demonstrate prejudice would impose an often impossible burden. . . . Where, as here, a selection procedure is challenged before the process begins, the failure to follow the procedure prescribed in the rule requires reversal. [*Miller*, 411 Mich at 326, citing *Gratz*, 35 Mich App 42.]

Several years later, the Court of Appeals took a different approach in a case involving a peremptory-challenge policy similar to the one at issue in this case. *People v Schmitz*, 231 Mich App 521; 586 NW2d 766 (1998), lv den 459 Mich 943 (1999), abrogated by *Bell*, 473 Mich at 293 (opinion by CORRIGAN, J.). *Schmitz* acknowledged that there was no constitutional right to a peremptory challenge, but that such challenges "have long been an important tool for ensuring a fair trial, both in fact and in appearance." *Id*. at 528. "For over a hundred years the only remedy for the denial of the right to a peremptory challenge was automatic reversal; the aggrieved party did not need to show resultant prejudice." *Id*. at 530. Relying on *Miller* and *Gratz*, and acknowledging MCR 2.613(A) and MCL 769.26, *Schmitz* held that because it was "impossible for this Court to find that the trial court's error was harmless . . . under the circumstances presented here, reversal of defendant's convictions is required." *Id*. at 532.

This Court's plurality opinion in *Bell* then confused what had been a well-established rule in Michigan at least since *Gratz* was decided, if not much longer. The dispositive issue in *Bell* was whether the trial court erred by raising questions sua sponte

8

about defense counsel's reasons for a peremptory challenge and whether any errors occurred in the trial court's resolution of whether there were valid, race-neutral justifications for the defendant's peremptory challenges under *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986). A majority of the justices held that no peremptory challenges were improperly denied. See *Bell*, 473 Mich at 283-292 (opinion by CORRIGAN, J., joined by YOUNG and MARKMAN, JJ.); *id*. at 300-301 (WEAVER, J., concurring). But, despite acknowledging that the initial error had been cured and that the Court "need not address whether a denial of a peremptory challenge is subject to automatic reversal," Part IV of the lead opinion in *Bell* purported to overrule *Miller* and *Schmitz* and hold, without performing a harmless-error or stare decisis analysis, that the denial of a statutory peremptory challenge was subject to harmless-error review. *Id*. at 293-295 (opinion by CORRIGAN, J.); see also *id*. at 301-303 (TAYLOR, C.J., dissenting in part and concurring in part) (concluding that error had occurred and that harmless-error review applied).

*Bell*'s purported overruling of prior caselaw does not control our decision here. Part IV of the lead opinion in *Bell* was unquestionably unnecessary to the resolution of that case and was thus mere dictum. Moreover, only three justices signed that portion of the lead opinion. The nonbinding status of this portion of the opinion was contemporaneously acknowledged by several members of this Court. See *id*. at 301 (WEAVER, J., concurring); *id*. at 320-321 (KELLY, J., dissenting); *id*. at 322-323 (CAVANAGH, J., dissenting). This Court has subsequently recognized the same. *Pellegrino v Ampco Sys Parking*, 486 Mich 330, 340 n 5; 785 NW2d 45 (2010) ("Only parts I through III of the lead opinion in *Bell* garnered majority support."); *id*. at 348 n 12 ("The lead opinion [in *Bell*] stated in dictum

9

that the improper denial of a peremptory challenge on a basis *other* than race is subject to [harmless-error] analysis.").[2]

In *Kabongo*, 507 Mich 78, this Court addressed whether the trial court's erroneous ruling on an objection to a peremptory challenge under *Batson*, 476 US 79, was a structural error requiring automatic reversal or whether it was subject to harmless-error review. Justice ZAHRA authored an opinion concluding that the erroneous denial of the defendant's peremptory challenge was not structural error warranting automatic reversal, because it was not constitutional in nature, and that harmless-error review was appropriate. *Kabongo*, 507 Mich at 124-138 (opinion by ZAHRA, J.). Then Chief Justice MCCORMACK authored an opinion concluding that the erroneous denial of a defendant's peremptory challenge called for automatic reversal. *Id*. at 150-156 (opinion by MCCORMACK, C.J.). Because each of these opinions was only signed by three justices, the case was affirmed by equal division, and neither opinion has the weight of precedent. *People v Anderson*, 389 Mich 155, 170; 205 NW2d 461 (1973) ("The clear rule in Michigan is that a majority of the Court must agree on a ground for decision in order to make that binding precedent for future cases."). We reconsider this question today.[3]

---

[2] Justice ZAHRA cites *People v Miller*, 482 Mich 540; 759 NW2d 850 (2008), in support of his argument that due process does not require automatic reversal for the denial of a peremptory challenge because errors relating to challenges for cause are reviewed for actual prejudice. In *Miller*, this Court held that a defendant must show prejudice to obtain relief if there is an erroneous denial of a challenge to a juror for cause. *Id*. at 561. This case does not involve a challenge for cause, so that holding is not applicable here.

[3] We disagree with Justice ZAHRA's repeated assertions that this case is meaningfully distinguishable from *Kabongo*. The issue at the root of both cases is whether a preserved error that infringes a defendant's nonconstitutional right to a peremptory challenge is subject to implicit automatic affirmance or automatic reversal. In *Kabongo*, the trial court

10

Justice ZAHRA's opinion for affirmance in *Kabongo* treated this question as turning on whether the trial court's erroneous denial of the defendant's peremptory challenge under *Batson* was a question of "federal constitutional dimension." *Kabongo*, 507 Mich at 124 (opinion by ZAHRA, J.). This language was drawn from *Rivera v Illinois*, 556 US 148, 152; 129 S Ct 1446; 173 L Ed 320 (2009), in which the United States Supreme Court was asked to consider an apparent conflict among state high courts regarding "whether the erroneous denial of a peremptory challenge requires automatic reversal of a defendant's conviction as a matter of federal law." *Id*. at 156. The Supreme Court explained that the exercise of peremptory challenges in state court is a matter of state law, so there was no need to disturb the judgment of the Illinois Supreme Court. *Id*. at 152. In addressing whether the peremptory-challenge issue required automatic reversal as a matter of federal law, the Supreme Court identified two sets of circumstances in which automatic reversal was appropriate: first, when the case involved a constitutional error concerning the qualification of the jury or judge, and second, when the case had been adjudicated by a federal judge or tribunal without the statutory authority to do so. *Id*. at 161. The *Rivera* Court clarified:

> Nothing in these decisions suggests that federal law renders state-court judgments void whenever there is a state-law defect in a tribunal's

erred by concluding that the defendant's peremptory challenge was unconstitutionally race-based in violation of *Batson*. *Kabongo*, 507 Mich at 119 (opinion by ZAHRA, J.); *id*. at 141 (opinion by MCCORMACK, C.J.). But that a trial court's erroneous peremptory-challenge ruling implicates a constitutional right does not mean that the ruling itself is a constitutional violation, a point that both opinions in *Kabongo* agreed upon. See *id*. at 126-133 (opinion by ZAHRA, J.); *id*. at 156 (opinion by MCCORMACK, C.J.). Therefore, that the erroneous denial here was based upon a misunderstanding of the statute and court rule rather than an error involving *Batson* does not alter the source of the peremptory-challenge right or the impact of the error. It also does not change the reality that it is, in practice, impossible for a defendant to ever demonstrate that such an error affected the jury's verdict.

11

composition. Absent a federal constitutional violation, States retain the prerogative to decide whether such errors deprive a tribunal of its lawful authority and thus require automatic reversal. States are free to decide, as a matter of state law, that a trial court's mistaken denial of a peremptory challenge is reversible error *per se*. Or they may conclude, as the Supreme Court of Illinois implicitly did here, that the improper seating of a competent and unbiased juror does not convert the jury into an ultra vires tribunal; therefore the error could rank as harmless under state law. [*Id*. at 161-162.]

Contrary to the assumption of the opinion for affirmance in *Kabongo*, an error need not involve a constitutional violation to warrant the application of an automatic-reversal rule. The *Rivera* Court made clear that it is for the individual states to determine the remedy appropriate for a violation of state law, including whether an error is of such magnitude as to require automatic reversal. And there is simply no precedent to suggest that an error *must* be constitutional in nature in order to be subject to automatic reversal. To the contrary, Michigan caselaw has recognized that the appropriate remedy for the erroneous denial of a peremptory challenge is automatic reversal even though this right is not constitutionally mandated. See *Miller*, 411 Mich at 323, 326; *Gratz*, 35 Mich App at 44-45, 47; *Schmitz*, 231 Mich App at 524. The appropriate remedy for an error is determined not by the source of the legal principle, but by the impact of the error and its redressability.

As then Chief Justice MCCORMACK stated in her opinion in *Kabongo*, "The rationale underlying an automatic-reversal rule in this context [erroneous denial of a peremptory challenge] is precisely the same as one that drives the structural-error doctrine—the difficulty or impossibility of determining prejudice to the defendant as a result of the error." *Kabongo*, 507 Mich at 153 (opinion by MCCORMACK, C.J.). Other state courts have similarly concluded that automatic reversal is the appropriate remedy for

12

such an error.  The Iowa Supreme Court has aptly set forth the reason this drastic remedy must be applied:

> In support of an automatic reversal rule, [the defendant] argues that the erroneous denial of a peremptory strike is not amenable to harmless error analysis because of the difficulty in showing actual prejudice.  This argument has merit.  The State has not provided, nor can we conceive of, any situation in which a defendant could ever show prejudice arising out of the wrongful denial of a peremptory challenge where, as is the case here, the juror was not also removable by a challenge for cause.  A defendant could only show prejudice by showing that the juror he sought to remove was biased.  However, if the juror were biased, then the juror would be removable for cause, and the question regarding the *peremptory* challenge would become moot.  [*State v Mootz*, 808 NW2d 207, 225 (Iowa, 2012) (citations omitted).]

See also *Commonwealth v Hampton*, 457 Mass 152, 164; 928 NE2d 917 (2010) ("[F]or purposes of State law, the erroneous denial of a peremptory challenge requires automatic reversal, without a showing of prejudice."); *State v Campbell*, 772 NW2d 858, 862 (Minn App, 2009) ("[A]utomatic reversal remains the appropriate remedy when a trial court erroneously denies a defendant's peremptory challenge, even after . . . *Rivera*," because an " 'erroneous denial of a peremptory challenge . . . does not lend itself to harmless error analysis.' "), quoting *State v Reiners*, 664 NW2d 826, 835 (Minn, 2003); *State v Hausauer*, 335 Mont 137, 147; 2006 MT 336; 149 P3d 895 (2006) ("The District Court's failure to dismiss [a prospective juror] for cause was an abuse of discretion, and resulted in structural error which requires a new trial.").[4]

---

[4] Justice ZAHRA laments that "Michigan now carries the dubious distinction of being the sole jurisdiction to reject harmless-error review of errors relating to nonconstitutional peremptory challenges and instead unwisely holds that any and all errors relating to peremptory challenges require automatic reversal." *Post* at 13-14.  We presume that Justice ZAHRA is asserting that the instant case marks the sole application of an automatic-reversal rule to an erroneous denial of a peremptory challenge not premised on a *Batson* error.

The error in this case illustrates the unworkability of the harmless-error standard in the context of peremptory challenges. Defendant's ability to issue peremptory challenges throughout the voir dire process was limited from the outset by the trial court's policy forbidding such challenges to previously seated prospective jurors. This necessarily limited defendant's ability to strategically consider the final composition of the jury. To attempt to assess how a trial would have differed if the jury composition had been altered requires an act of pure speculation, making it an exercise in futility to ever establish that

Indeed, as Justice ZAHRA acknowledges, there are few cases addressing this precise issue. It is unsurprising that most cases addressing the improper denial of a peremptory challenge involve *Batson* challenges, given that this is the context in which most erroneous denials occur. Therefore, few jurisdictions have made the distinction proposed by Justice ZAHRA between *Batson*-based erroneous denials and other erroneous denials. Moreover, the rationale employed by most jurisdictions that have adopted the automatic-reversal rule is not dependent on the existence of a *Batson* error and, in our judgment, applies with equal force to any preserved erroneous denial of a peremptory challenge.

Justice ZAHRA identifies Louisiana as the only state to have addressed the improper denial of "backstriking," and he cites one case holding that this error was harmless. See *post* at 17 n 43, citing *State v Shrader*, 881 So 2d 147, 153-154 (La App 2 Cir 8/18/04), mod 881 So 2d 147 (La App 2 Cir 9/24/04), rev'd on other grounds *State v Sims*, 7 So 3d 1288, 1292 (La App 2 Cir 4/15/09). Louisiana applies an automatic-reversal rule for the denial of peremptory challenges generally, which is a right guaranteed in the Louisiana Constitution, see La Const, art 1, § 17, but applies a harmless-error standard to the denial of a peremptory challenge to a provisionally selected juror, which the Louisiana Supreme Court held was a right solely conferred by statute and not conferred by the Louisiana Constitution. *State v Lewis*, 112 So 3d 796, 803-804; 2012-1021 (La 3/19/13). However, the Louisiana Supreme Court rejected a harmless-error standard that would place on the defendant "an impossible burden" to show an effect on the outcome of the trial. *Id*. at 805. Instead, "the state had the burden of showing that the jury's verdicts were surely unattributable to" the erroneous deprivation of the type of peremptory challenge. *Id*. While we do not adopt Louisiana's approach to this issue, its caselaw does not clearly undermine the rationale supporting this Court's holding, nor does it clearly support Justice ZAHRA's contrary position that a defendant is required to demonstrate that the error impacted the jury's verdict.

14

the error was more probably than not outcome-determinative.  See *Lukity*, 460 Mich at 495-496.  Indeed, the opinion for affirmance in *Kabongo* admitted that "for all intents and purposes, harmless-error review will almost always result in automatic affirmance." *Kabongo*, 507 Mich at 137 (opinion by ZAHRA, J.).  This would effectively erase the ability of criminal defendants to obtain relief on appeal for erroneous denials of a challenge to jurors they found unsuitable, contrary to the right to challenge such jurors provided by the Michigan Legislature and clarified through the Michigan Court Rules.  Leaving defendants without a remedy in this scenario would be a miscarriage of justice for purposes of MCL 769.26.  See *Kabongo*, 507 Mich at 155 (opinion by MCCORMACK, C.J.) (noting that MCL 769.26 "leaves it to the court's discretion to find a miscarriage of justice, or not"); see also MCR 2.613(A) (stating that an error under the court rules shall result in a new trial if allowing the verdict to stand "appears to the court inconsistent with substantial justice.").

We must not take lightly the right at stake here.  In *Kabongo*, then Chief Justice MCCORMACK explained its significance:

> [T]his conclusion is also informed and supported by the real-world harm at stake with these errors.  It is no secret that people, including prospective jurors, have unconscious biases.  See, e.g., Bassett, *Deconstruct and Superstruct: Examining Bias Across the Legal System*, 46 U Cal Davis L Rev 1563, 1577-1578 (2013) (noting "court decisions [that] have recognized that unconscious bias has the potential to impact jurors' perceptions, assessments, and ultimately, their verdicts").  Peremptory challenges—though not constitutionally required—are an important tool for maintaining fair trials by allowing prosecutors and defendants to remove jurors they perceive as being likely to be sympathetic to the other side.  See *People v Luciano*, 10 NY3d 499, 502; 890 NE2d 214 (2008) ("Though not a trial tool of constitutional magnitude, peremptory challenges are a mainstay in a litigant's strategic

15

arsenal."). [*Kabongo*, 507 Mich at 155-156 (opinion by MCCORMACK, C.J.).][5]

Peremptory challenges must not be hampered in the manner that the trial court mandated here. The questioning of each prospective juror provides litigants with the opportunity to observe and gauge the reactions of all other prospective jurors for any signs of bias in one direction or another. As new prospective jurors are seated, new questions may arise that lead to additional information about previously seated individuals. The system imposed here cut short defendant's ability to engage in this ongoing strategic monitoring, contrary to the mandate of MCR 2.511(E). As this right would be virtually immunized from appellate protection by the application of the harmless-error standard, we conclude that automatic reversal is the appropriate remedy for the erroneous denial of a defendant's peremptory challenge when the error is preserved and no curative action is taken.[6]

---

[5] Justice ZAHRA questions, as an empirical matter, how effective lawyers are at identifying jurors' unconscious biases and using peremptory challenges to their advantage. But this misses the point. As with any other right, there is no guarantee that a party in any particular case will use the longstanding right to a peremptory challenge effectively, or that the exercise of this right will necessarily result in an impartial jury. Rather, peremptory challenges are a tool that parties may employ to remove jurors who may have unconscious biases but who are not removable for cause. See, e.g., *Poet v Traverse City Osteopathic Hosp*, 433 Mich 228, 240; 445 NW2d 115 (1989) ("The very purpose of [peremptory challenges] is to provide an unrestricted *opportunity* to excuse any juror without assigning a reason.") (emphasis added). That the exercise of this right does not invariably result in a perfectly impartial jury does not make the right insignificant or unworthy of appellate protection. To the extent that Justice ZAHRA suggests that the right to peremptory challenge is a relic of the common law that no longer serves any beneficial purpose, this is an argument best addressed to the Legislature, which continues to recognize the right to peremptory challenges in criminal cases. See MCL 768.12; MCL 768.13.

[6] It does not matter that the trial court's error in this case equally impaired both parties' right to exercise peremptory challenges. Because the double-jeopardy prohibition precludes a prosecutor's appeal of an acquittal, the issue of whether harmless error applies will only ever arise in the context of a defendant's appeal of a conviction, and it only takes

16

### III.  CONCLUSION

For the foregoing reasons and those set forth in then Chief Justice MCCORMACK's opinion in *Kabongo*, 507 Mich at 141, we hold that the erroneous denial of a defendant's peremptory challenge is subject to automatic reversal when the error is preserved and no curative action is taken.  Accordingly, we reverse defendant's convictions and remand to the trial court for a new trial.

> Richard H. Bernstein
> Megan K. Cavanagh
> Elizabeth M. Welch
> Kyra H. Bolden

---

one juror for a defendant to avoid conviction.  It is impossible to determine whether the exercise of defendant's peremptory-challenge right would have changed the outcome, so automatic reversal is appropriate.  In other words, that the prosecution was also deprived of its statutory right to peremptorily challenge does not remedy the trial court's improper denial of defendant's statutory right to peremptorily challenge, nor does it affect our conclusion that a retrial is warranted to avoid a miscarriage of justice.

STATE OF MICHIGAN

SUPREME COURT

THE PEOPLE OF THE STATE OF
MICHIGAN,

        Plaintiff-Appellee,

v                                            No. 161513

ROBERT YARBROUGH, JR.,

        Defendant-Appellant.

_____

ZAHRA, J. (*dissenting*).

      Defendant was convicted by a jury of several serious crimes: kidnapping,[1] assault

with a dangerous weapon,[2] assault by strangulation,[3] and three counts of first-degree

criminal sexual conduct (CSC-I).[4] The evidence presented at trial was overwhelming and

undoubtedly supports the jury's verdict.[5] The trial court transgressed MCR 2.511(G) by

---

[1] MCL 750.349.

[2] MCL 750.82.

[3] MCL 750.84.

[4] MCL 750.520b.

[5] The Court of Appeals issued an opinion presenting the following facts established at trial:

> This case arises from an incident that occurred at a house on Leicester
> Court in Detroit. The victim, SH, and a friend drove to the neighborhood to
> pick up money defendant owed SH. SH got out of the car, and defendant led
> her into the upper flat of a nearby house. He removed the battery from her
> phone and began choking her and hitting her in the face before dragging her
> to a rear bedroom. Over the course of the night, defendant forcibly

precluding counsel from backstriking prospective jurors by peremptory challenge. "A 'backstrike' is a peremptory challenge used to strike a prospective juror after the juror has been accepted onto the jury panel but before the panel has been sworn. Thus, backstrikes permit an attorney to tentatively accept a juror by declining to exercise a peremptory challenge, but then revisit that decision after additional potential jurors are questioned."[6]

---

penetrated SH's mouth, vagina, and anus while choking her, pinching her with pliers, and hitting her with a hammer. He manually restrained her multiple times when she attempted to escape. He threatened to bury her alive in cement and let her suffocate. He tied her hands, feet, and neck together with a rope and put a scarf in her mouth.

SH was able to escape after approximately 20 hours, when defendant left her tied up and went out to purchase two douches to "douche the evidence out of [her]." SH was able to get her feet out of the rope and ran outside, where she was eventually able to find someone who let her use a phone to call 911. A forensic examination revealed 28 distinct injuries to SH's head, neck, extremities, and genitals. A rape kit was performed. The police recovered a hammer from the scene. DNA analysis yielded "very strong support" that defendant contributed the male DNA found in the rape kit and "very strong support" that defendant and SH had contributed DNA to the hammer. SH testified that she never had consensual sex with defendant in the two or three months that she knew him. [*People v Yarbrough*, unpublished per curiam opinion of the Court of Appeals, issued April 30, 2020 (Docket No. 347400), pp 1-2.]

[6] Diamond & Kaiser, *Race and Jury Selection: The Pernicious Effects of Backstrikes*, 59 How L J 705, 706 (2016), citing *Snyder v Louisiana*, 552 US 472, 475; 128 S Ct 1203; 170 L Ed 2d 175 (2008).

The court's error affected both parties equally.[7] Few states allow this practice,[8] though there is no dispute that our court rules permit backstriking jurors.[9]

Defense counsel preserved defendant's claim by timely objecting after the trial court refused to allow the exercise of peremptory challenges in a manner that is consistent with the Michigan Court Rule. Thus, the error was preserved. The Court of Appeals affirmed defendant's convictions, concluding that harmless-error analysis governed their review and that defendant failed to establish that the error was more likely than not outcome-determinative. This Court granted defendant's application to consider whether this preserved error "constitutes a structural error warranting automatic reversal, or . . . is instead subject to harmless-error review."[10] The majority opinion holds that the wrongful

---

[7] Neither the prosecutor nor counsel for defendant was permitted to backstrike jurors. The trial court's voir dire practice applied evenly to both defendant and the prosecution. At the conclusion of the jury-selection process, defendant had exercised more preemptory challenges than the prosecution.

[8] *Id*. at 706.

[9] MCR 2.511(G) provides:

> Replacement of Challenged Jurors. After the jurors have been seated in the jurors' box and a challenge for cause is sustained or a peremptory challenge or challenges exercised, another juror or other jurors must be selected and examined. Such jurors are subject to challenge as are previously seated jurors.

[10] *Ante* at 1. While I agree with the majority opinion that this is the question presented in the present case, I strongly disagree with its assessment that this is "a question left unresolved in *People v Kabongo*, 507 Mich 78; 968 NW2d 264 (2021) . . . ." *Id. Kabongo* is distinguishable in that it involved a potential race-based error under *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), which, if shown, is a constitutional error that is not subject to review and requires automatic reversal. The instant case involves only the violation of a court rule and not the race-based exercise of peremptory challenges. This material distinction is ignored in the majority opinion.

denial of peremptory challenges is tantamount to a structural error and therefore is not subject to harmless-error review.[11]  I dissent.

It is abundantly clear that errors relating to the right of peremptory challenges are not errors of constitutional magnitude, so I conclude that such errors are subject to harmless-error review.  Because defendant cannot show outcome-determinative prejudice arising from this error, I would affirm defendant's convictions.

———————————

The Fourteenth Amendment of the United States Constitution provides that no state shall deny "any person within its jurisdiction the equal protection of the laws."[12]  The Michigan Constitution provides the same protection.[13]  Many laws and court rules have been promulgated to safeguard equal protection and the right to an impartial jury.[14]  And some of these tools are more directly designed to ensure an impartial jury than is the right to peremptorily strike a prospective juror.  The most obvious example of such a tool is the challenge for cause, which is integral in the selection of an impartial jury; yet errors relating

———————————

[11] Oddly, the majority never labels this error as "structural," likely to avoid the caselaw discussed below demonstrating that structural errors involve constitutional violations.  The result of the majority's analysis is that the error here has all the defendant-friendly benefits of a structural error without the need for the error to be of constitutional magnitude.

[12] US Const, Am XIV.

[13] See Const 1963, art 1, § 2.

[14] See Chapter 13 of the Revised Judicature Act, MCL 600.1300 *et seq*. (concerning jurors); Chapter 8 of the Code of Criminal Procedure, MCL 768.8 to MCL 768.10 and MCL 768.12 to MCL 768.18 (concerning trials).

4

to a challenge for cause are reviewed for "actual prejudice to [a defendant's] cause."[15]  It is difficult to comprehend how errors relating to challenges for cause are reviewed for actual prejudice, yet today, the Court essentially declares that lesser errors relating to peremptory challenges (which have no necessary connection to jury impartiality) are tantamount to structural error.  The majority opinion ignores the longstanding principle that structural error is a "*fundamental constitutional* error[] that 'def[ies] analysis by "harmless error" standards.' "[16]  Indeed, "[t]he purpose of the structural error doctrine is to ensure insistence on certain basic, *constitutional* guarantees that should define the framework of any criminal trial."[17]  I am at a loss to explain how the denial of a peremptory challenge not rooted in an alleged *Batson*[18] error is today considered equivalent to fundamental constitutional error such that it also merits automatic reversal.[19]

---

[15] MCL 600.1354(1).  See *People v Miller*, 482 Mich 540; 759 NW2d 850 (2008).

[16] *Neder v United States*, 527 US 1, 7; 119 S Ct 1827; 144 L Ed 2d 35 (1999) (citations omitted; emphasis added).

[17] *Weaver v Massachusetts*, 582 US 286, 294-295; 137 S Ct 1899; 198 L Ed 2d 420 (2017) (emphasis added).

[18] *Batson*, 476 US 79.

[19] For all the discussion in the majority opinion about dicta, it is hard not to notice that the majority opinion's analysis is mostly based on a partially concurring opinion issued by our former colleague in *Kabongo*.  A partially concurring opinion is obviously dicta in any case.  But in *Kabongo*, then Chief Justice MCCORMACK concluded there was a *Batson* error and had another member of the Court agreed, there would be no dispute that the defendant established a structural error requiring automatic reversal.  The majority opinion's claim that it is revisiting an unaddressed question in *Kabongo* is not correct.  Simply put, an alleged *Batson* error is subjected to far greater scrutiny than a peremptory challenge that is allegedly improperly denied or granted without any hint of unlawful discrimination.  A generic nonconstitutional error only merits generic appellate review.  Accordingly, I would

5

As explained in *People v Kabongo*:[20]

> The United States Supreme Court has not found structural error from error that is not of constitutional dimension; indeed, the category of errors that require automatic reversal, i.e., "structural errors," has only been applied to certain constitutional errors in a "limited class" of cases.[97]  Because it is a statutory right, the denial of the right to peremptory challenge has yet to fall under the "limited class of constitutional errors [that] are structural and subject to automatic reversal."[98]  This Court has been similarly reluctant to find structural error when there is no federal constitutional violation.  Indeed, this Court has only once before—arguably, under Michigan law alone—found a "structural error requiring automatic reversal" that was not squarely within this limited class of constitutional errors.[99]  In *People v Duncan*, this Court held that automatic reversal is required when a jury is allowed "to deliberate a criminal charge where there is a complete failure to instruct the jury regarding any of the elements necessary to determine if the prosecution has proven the charge beyond a reasonable doubt."[100]  While *Duncan* cites an abundance of federal caselaw, the crux of *Duncan*'s analysis turns only on cited Michigan caselaw to extend a remedy of this magnitude, regardless of preservation, despite no definitive ruling from the United States Supreme Court on the issue.[101]

---

[97] *People v Duncan*, 462 Mich 47, 51; 610 NW2d 551 (2000), citing *Neder*, 527 US at 8.  As the *Duncan* Court noted, the Court in *Neder* identified "several examples of structural error":

> "Indeed, we have found an error to be 'structural,' and thus subject to automatic reversal, only in a 'very limited class of cases.' " *Johnson v United States*, 520 US 461, 468; 117 S Ct 1544; 137 L Ed 2d 718 (1997) (citing *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963) (complete denial of counsel); *Tumey v Ohio*, 273 US 510; 47 S Ct 437; 71 L Ed 749 (1927) (biased trial judge); *Vasquez v Hillery*, 474 US 254; 106 S Ct 617; 88 L Ed 2d 598 (1986) (racial discrimination in selection of grand jury [i.e., systematic

---

affirm when the evidence presented at trial supports the jury's verdict such that any impartial jury would have reached the same result.

[20] *People v Kabongo*, 507 Mich 78, 124-126; 968 NW2d 264 (2021) (opinion by ZAHRA, J.) (alteration in original).

6

exclusion of black jurors]); *McKaskle v Wiggins*, 465 US 168; 104 S Ct 944; 79 L Ed 2d 122 (1984) (denial of self-representation at trial); *Waller v Georgia*, 467 US 39; 104 S Ct 2210; 81 L Ed 2d 31 (1984) (denial of public trial); *Sullivan v Louisiana*, 508 US 275; 113 S Ct 2078; 124 L Ed 2d 182 (1993) (defective reasonable-doubt instruction[)]. [*Duncan*, 462 Mich at 52, quoting *Neder*, 527 US at 8.]

[98] *Duncan*, 462 Mich at 51.

[99] *Id*. (explaining that *constitutional* errors may be structural in nature).

[100] *Id*. at 52-53, citing *People v Lambert*, 395 Mich 296, 304; 235 NW2d 338 (1975), and noting *People v Newland*, 459 Mich 985[;] 593 NW2d 557 (1999).  See also 2A Gillespie, Michigan Criminal Law & Procedure (2d ed), § 24:16, p 148 (citing only *Duncan* as an example of the Michigan Supreme Court's finding "structural error not subject to review for prejudice").

[101] See *Duncan*, 462 Mich at 51-56.  See also 7 LaFave et al, Criminal Procedure (4th ed), § 27.6(d), p 158 ("With a few exceptions, lower courts also have not hesitated to find harmless incomplete jury instructions omitting other elements, at least when proof of the element was introduced and uncontested at trial.") (citations omitted).

---

The majority opinion's holding, that a trial court's "erroneous denial of a defendant's peremptory challenge is subject to automatic reversal when the error is preserved and no curative action is taken," is seriously misguided.  As previously noted, and contrary to the majority opinion's claim, we are not revisiting an unaddressed question from *People v Kabongo*.[21]  No arguable federal or state constitutional question has been presented in this case.  The majority opinion discusses *Batson v Kentucky*,[22] our evenly

---

[21] See note 10 of this opinion.

[22] *Batson*, 476 US 79.

7

divided decision in *Kabongo*,[23] and our earlier plurality decision in *People v Bell*,[24] all of which concerned actual or alleged *Batson* errors.[25] But neither *Bell* nor *Kabongo* addressed the question presented in this case; neither considered that a majority of justices would have such reverence for *all* peremptory challenges as to claim that our court rule concerning the procedure of peremptory challenges, which the Court can change on a whim, is so significant that failing to follow it is the same as denying a defendant a fundamental constitutional right.

This is because peremptory challenges are not of constitutional dimension, let alone required by the United States Constitution or the Michigan Constitution. The majority opinion claims without support that "an error need not involve a constitutional violation to warrant the application of an automatic-reversal rule." The crucial point that the majority ignores is that automatic reversal is an extreme remedy that has been reserved for structural errors; "[t]he purpose of the structural error doctrine is to ensure insistence on certain basic, *constitutional guarantees* that should define the framework *of any criminal trial*."[26] That purpose is clearly inapplicable here. Simply put, the approach adopted in the majority opinion is the antithesis of the structural-error approach. Treating this nonconstitutional

---

[23] *Kabongo*, 507 Mich 78.

[24] *People v Bell*, 473 Mich 275, 293; 702 NW2d 128 (2005) (opinion by CORRIGAN, J.), amended 474 Mich 1201 (2005).

[25] "A *Batson* error occurs when a juror is actually dismissed on the basis of race or gender." *Bell*, 473 Mich at 293 (opinion by CORRIGAN, J.).

[26] *Weaver*, 582 US at 294-295 (emphasis added). The only other rationale the majority opinion gives for its conclusion is that "there is simply no precedent to suggest that an error *must* be constitutional in nature in order to be subject to automatic reversal." But the majority opinion fails to explain why an alleged lack of precedent advances its position.

8

error as tantamount to a structural error turns the structural-error doctrine into an unreliable barometer of certain basic, constitutional guarantees when a court can whimsically determine which of the hundreds of nonconstitutional errors *warrants* the application of an automatic-reversal rule.

That peremptory challenges may be eliminated altogether, as one state already has,[27] demonstrates how certain courts have increasingly retreated from viewing peremptory challenges as a significant right. Aside from relying on more-current dissenting opinions, the majority opinion focuses on caselaw issued in or before 1981. Much has changed since then.

In 2000, the Supreme Court of the United States explained:

> We have long recognized the role of the peremptory challenge in reinforcing a defendant's right to trial by an impartial jury. But we have long recognized, as well, that such challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, *peremptory challenges are not of federal constitutional dimension*.[28]

---

[27] On August 30, 2021, the Arizona Supreme Court filed an order making Arizona the first state to eliminate peremptory challenges in civil and criminal cases. Effective January 1, 2022, Ariz R Crim P 18.4(c) and 18.5(g), providing for peremptory challenges and their exercise, were abrogated in their entirety. The current version of Ariz R Crim P 18.5 allows the court to excuse a juror *for cause* when the party challenging the juror has established by a preponderance of the evidence that the juror cannot render a fair and impartial verdict, and further provides that "[t]he court may excuse a prospective juror upon stipulation of the parties that, in their good faith belief, the prospective juror cannot render a fair and impartial verdict." Thus, a juror may only be excused if the court determines or the parties agree that the juror must be excused for cause. "After the court has resolved any challenges for cause, the prospective jurors remaining in the jury box or on the list of prospective jurors constitute the trial jurors." Ariz R Crim P 18.5(j)(1).

[28] *United States v Martinez-Salazar*, 528 US 304, 311; 120 S Ct 774; 145 L Ed 2d 792 (2000) (citations omitted; emphasis added).

Underscoring the point that peremptory challenges are not so critical now to a defendant's right to a trial by an impartial jury as they once were is not difficult:

> It is important to recognize that peremptory challenges long antedated the right of a criminal defendant to appeal a conviction, both in England and America. Indeed, there was never an English or federal common law right to a criminal appeal. The founders engaged in some limited debates about the question of whether our Constitution should recognize the right to a criminal appeal, but ultimately decided it should not. In 1881, Congress gave the Supreme Court statutory authority to review federal death penalty convictions by writ of error, but it was not until the Court of Appeals Act of 1891 that federal criminal defendants had a generalized statutory right to a criminal appeal.

> \* \* \*

> The fact that peremptory challenges were part of the criminal trial process long before there was any statutory or constitutional right to a criminal appeal is important when we consider the problem of curative peremptory challenges. As Justice Scalia observed in his concurrence in *Martinez-Salazar*, peremptory challenges must have had a fundamentally curative purpose in these early years, when they represented the only way to correct a trial judge's erroneous retention of a biased juror. As he also observed, we distort that historical purpose when we allow a criminal defendant the option of either using a peremptory challenge to remove a biased juror or hoarding the peremptory challenge and appealing the conviction.[29]

---

[29] Pizzi & Hoffman, *Jury Selection Errors On Appeal*, 38 Am Crim L Rev 1391, 1416-1417 (2001), citing *Martinez-Salazar*, 528 US at 319 (Scalia, J., concurring), which stated:

> Indeed, that *must* have been one of [the] purposes [of curative peremptory challenges] in earlier years, when there was *no appeal* from a criminal conviction, see *Bessette v WB Conkey Co*, 194 US 324, 335-336[; 24 S Ct 665; 48 L Ed 997] (1904)—so that if the defendant did not correct the error by using one of his peremptories, the error would not be corrected at all. It is certainly not clear to me that the institution of appeals exempted defendants from using peremptories for this original purpose, thereby giving them (in effect) additional challenges.

The above points are compelling, yet the majority opinion maintains that "[w]e must not take lightly the right at stake here." In support, taking language from then Chief Justice MCCORMACK's opinion in *Kabongo* the majority opinion explains:

"[T]his conclusion is also informed and supported by the real-world harm at stake with these errors. It is no secret that people, including prospective jurors, have unconscious biases. See, e.g., Bassett, *Deconstruct and Superstruct: Examining Bias Across the Legal System*, 46 UC Davis L Rev 1563, 1577-1578 (2013) (noting "court decisions [that] have recognized that unconscious bias has the potential to impact jurors' perceptions, assessments, and ultimately, their verdicts"). Peremptory challenges—though not constitutionally required—are an important tool for maintaining fair trials by allowing prosecutors and defendants to remove jurors they perceive as being likely to be sympathetic to the other side. See *People v Luciano*, 10 NY3d 499, 502; 890 NE2d 214 (2008) ("Though not a trial tool of constitutional magnitude, peremptory challenges are a mainstay in a litigant's strategic arsenal.")."[30]

I agree that jurors' unconscious biases may affect their verdicts. However, as the cited article notes, " '[n]ot even the lawyer herself[] can be certain whether a decision to exercise a peremptory challenge rests upon an impermissible . . . stereotype.' "[31] The article certainly makes no assertion that lawyers are somehow able to uncover jurors' unconscious biases during voir dire. The value of a permitted peremptory challenge is just as enigmatic as the harm from a denial of a peremptory challenge. The value and harm in any given case is anecdotal.[32]

---

[30] *Ante* at 13-14, quoting *Kabongo*, 507 Mich at 155-156 (opinion by MCCORMACK, C.J.).

[31] *Deconstruct and Superstruct*, 46 UC Davis L Rev at 1578 n 63 (second alteration in original), quoting *Rice v Collins*, 546 US 333, 343; 126 S Ct 969; 163 L Ed 2d 824 (2006) (Breyer, J., concurring).

[32] In one preeminent study of actual peremptory-challenge usage in criminal trials, prospective jurors who were removed by peremptory challenge were then formed into shadow juries to observe the trials from which they had been excused. See Zeisel &

11

Federal courts, as well as an increasing number of states, likely a majority,[33] reject automatic reversal as a remedy for error relating to peremptory challenges and agree that

Diamond, *The Effect of Peremptory Challenges on Jury and Verdict: An Experiment in A Federal District Court*, 30 Stan L Rev 491, 491-492 (1978). The experimenters were then able to determine whether the attorneys had reliably excused those jurors who would have voted against them entering deliberations. See *id*. at 513-518. The results were "not impressive." *Id*. at 517. Overall, "attorney performance was highly erratic," with substantial fluctuations from one case to the next. *Id*. In the aggregate, prosecutors "made about as many good challenges as bad ones," defense counsel fared only "slightly better," and the results brought into question "the role of peremptory challenges in furthering the constitutionally prescribed goal of trial by an impartial jury." *Id*. at 517-518.

[33] "Presently, at least twenty-nine states and the United States do not employ the remedy of automatic reversal, but, instead, require a defendant to show prejudice—namely, that a biased juror actually sat on the jury—in order to gain appellate relief." *People v Roldan*, 353 P3d 387, 395-396 (Colo App, 2011) (Bernard, J., concurring), citing *Kopsho v State*, 959 So 2d 168, 175 n 3 (Fla, 2007) (Bell, J., concurring) (listing cases). Later cases reflect more states abandoning automatic reversal or retaining the requirement that the defendant show prejudice, including Colorado, *People v Novotny*, 320 P3d 1194, 1203; 2014 CO 18 (Colo, 2014); Georgia, *Willis v State*, 304 Ga 686, 704-706; 820 SE2d 640 (2018); Kentucky, *Moore v Commonwealth*, unpublished opinion of the Kentucky Supreme Court, issued April 25, 2013 (Case No. 2011-SC-000700-MR) (noting that "a preserved *Batson* error is subject to the usual standards of harmless error analysis"); Missouri, *State v Letica*, 356 SW3d 157, 166 (Mo, 2011) (finding that "the circuit court's erroneous denial of [the defendant's] peremptory challenge constituted a harmless error under the facts presented in this case"); Louisiana, *State v Lewis*, 112 So 3d 796; 2012-1021 (La 3/19/13); Ohio, *State v Jones*, 160 Ohio St 3d 314, 321; 156 NE3d 872; 2020-Ohio-3051 (2020) ("Because a trial court's good-faith mistake in controlling the parties' use of their peremptory strikes does not violate the basic constitutional guarantees setting the framework of a criminal trial as a whole, the error is not structural in nature and therefore is not presumptively prejudicial. Consequently, it is subject to harmless-error review."); Oklahoma, *Robinson v State*, 255 P3d 425, 427-430; 2011 OK CR 15 (Okla Crim App, 2011) (citing *Rivera v Illinois*, 556 US 148; 129 S Ct 1446; 173 L Ed 2d 320 (2009), the Court reversed caselaw holding that "this is structural error not subject to harmless error review" and instead opting to "review these claims on a case-by-case basis, and determine whether the error is harmless beyond a reasonable doubt"); South Dakota, *State v Verhoef*, 627 NW2d 437, 442; 2001 SD 58 (2001) ("[The defendant] has failed to show that the twelve jurors who heard the evidence and convicted him based upon that evidence were not impartial."); and Wyoming, *In the Matter of LDB*, 454 P3d 908, 917; 2019 WY 127 (2019).

"[t]he better rule is that no substantial right is impaired so long as the jury that actually sits is impartial."[34] The majority opinion embraces a former colleague's concurring opinion in *Kabongo*, a case that is clearly distinguishable from the present case because it involved a potential *Batson* error, which, if shown, is a constitutional error that is not subject to review and requires automatic reversal. By contrast, the instant case involves only the violation of a court rule. Further, the views espoused in the concurring opinion in *Kabongo*, which are embraced by the majority opinion, increasingly stand alone from contrary caselaw across the country. Indeed, after the Supreme Court of the United States issued *Rivera v Illinois*[35] and signaled its approval of the use of harmless-error review for the denial of peremptory challenges, at least four states have accepted *Rivera*'s invitation and overruled their caselaw that had previously subjected the error to automatic reversal.[36] Support for the position espoused in the majority opinion has dwindled. Michigan now carries the dubious distinction of being the sole jurisdiction to reject harmless-error review of errors

---

[34] LaFave et al, 7 Criminal Procedure (4th ed), § 27.6(b) n 23, p 129.

[35] *Rivera*, 556 US 148.

[36] *State v Lupastean*, 200 Wash 2d 26, 50-53; 513 P3d 781 (2022); *Novotny*, 320 P3d at 1199-1203, 1206; see also *People v Roldan*, 322 P3d 922; 2014 CO 22 (2014); *State v Carr*, 300 Kan 1; 133-139; 331 P3d 544 (2014), rev on other grounds, *Kansas v Carr*, 577 US 108 (2016); *Robinson v State*, 255 P3d 425, 427-430; 2011 OK CR15 (Okla Crim App, 2011). See also *Willis v State*, 304 Ga 686, 707; 820 SE2d 640 (2018) (overruling its caselaw and holding "that a defendant is not presumptively harmed by a trial court's erroneous failure to excuse a prospective juror for cause simply because the defendant subsequently elected to remove that juror through the use of a peremptory strike. Instead, such a defendant must show on appeal that one of the challenged jurors who served on his or her twelve-person jury was unqualified.").

relating to nonconstitutional peremptory challenges and instead unwisely holds that any and all errors relating to peremptory challenges require automatic reversal.

Lastly, *Kabongo* did state that "for all intents and purposes, harmless-error review will almost always result in automatic affirmance."[37] But the Legislature has provided for the analysis applicable here. MCL 769.26 provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

My understanding of a "miscarriage of justice" is not in accordance with the understanding of the phrase expressed in the majority opinion. The term should be reserved for "[a] grossly unfair outcome in a judicial proceeding, as when a defendant is convicted despite a lack of evidence on an essential element of the crime. — Also termed *failure of justice*."[38] Indeed, in discussing our harmless-error statute and the miscarriage-of-justice standard, we have said that the key is "not whether there were some irregularities but instead did the defendants have a fair and impartial trial."[39] Under the approach outlined in the majority

---

[37] *Kabongo*, 507 Mich at 137 (opinion by ZAHRA, J.). But not always. See, e.g., *State v Frausto*, 463 SW3d 469 (Tenn, 2015).

[38] *Black's Law Dictionary* (11th ed).

[39] *People v O'Hara*, 278 Mich 281, 306-307; 270 NW 298 (1936); see also *People v Liggett*, 378 Mich 706, 715; 148 NW2d 784 (1967) ("We are convinced that the errors complained of were such as to deprive defendant of a fair trial 'by an impartial jury[,]' or, to use the words of the statute [MCL 769.26], 'resulted in a miscarriage of justice.' ") (citation omitted), abrogated on other grounds by *People v Carines*, 460 Mich 750, 766 n 14 (1999); *People v Mosley*, 338 Mich 559, 566; 61 NW2d 785 (1953) (noting that the test under the statute is whether the defendant had a "fair and impartial trial").

14

opinion, it does not matter whether the error actually deprives the defendant of a fair or impartial trial or has any effect whatsoever on the proceedings—it is irrebuttably presumed to do so. Not only does this disregard the caselaw just cited, it also ignores more recent caselaw holding that this statute requires the *defendant* to show that the error more likely than not was outcome-determinative.[40]

In glossing over this caselaw, the majority opinion essentially holds that the statute means something different in these circumstances than it does in every other instance in which it applies. Rather than undertaking the individualized analysis required by the statute and determining whether defendant has met his burden, the majority opinion holds that erroneous denials of peremptory challenges are per se miscarriages of justice. A majority of this Court opts for this different interpretation largely because applying the actual harmless-error standard would usually result in a ruling against the defendant. Giving the statute a different meaning and application based on the type of error at stake makes a mockery of the core interpretive rule that "the meaning of words in a statute cannot change with the statute's application."[41] In doing so, the majority opinion has flouted the general standard that the Legislature has imposed here, almost entirely because a majority of this Court does not like the results that standard would produce.[42]

---

[40] *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999).

[41] *United States v Santos*, 553 US 507, 522-523; 128 S Ct 2020; 170 L Ed 2d 912 (2008) (plurality opinion); see also *Clark v Martinez*, 543 US 371, 386; 125 S Ct 716; 160 L Ed 2d 734 (2005) (disavowing the "dangerous principle that judges can give the same statutory text different meanings in different cases").

[42] It is worth noting that other approaches to prejudice have been proposed in this context that might not always result in affirmance, such as determining the harmfulness of the error by considering the weight of the evidence against the defendant rather than the impartiality

To be clear, a defendant's right to peremptory challenges is provided by statute, MCL 768.13(1) ("A person who is being tried alone for an offense punishable by death or imprisonment for life, shall be allowed to challenge peremptorily 12 of the persons drawn to serve as jurors."), and court rule, since MCR 6.412(E)(1) tracks the statute ("Each defendant is entitled to 5 peremptory challenges unless an offense charged is punishable by life imprisonment, in which case a defendant being tried alone is entitled to 12 peremptory challenges[.]"). The trial court's voir dire practice did not violate MCL 768.13 or MCR 6.412; defendant admittedly could have used all 12 peremptory challenges. The practice only transgressed MCR 2.511(G), which addresses the replacement of challenged jurors and provides:

> After the jurors have been seated in the jurors' box and a challenge for cause is sustained or a peremptory challenge or challenges exercised, another juror or other jurors must be selected and examined. Such jurors are subject to challenge as *are* previously seated jurors. [Emphasis added.]

Had this provision instead stated that previously seated jurors "were" subject to challenge, the trial court's practice would have been valid. The majority opinion's claim that harmless-error review "would effectively erase the ability of criminal defendants to obtain relief on appeal for erroneous denials of a challenge to jurors they found unsuitable, contrary to the right . . . provided by the Michigan Legislature," is simply not true. Nor is the majority opinion's claim that our court rules clarified MCL 768.13 to allow criminal

of the jury. See *LDB*, 454 P3d at 926-927 (Fox, J., concurring). It might also be the case that the greater the number of denied peremptory challenges, the more likely the error is to be prejudicial. Or we could consider whether an unequal allocation of peremptory challenges, with a greater number going to the prosecution, resulted in prejudice. Thus, there are ways for us to examine prejudice on an individualized level in the context of an erroneous denial of a peremptory challenge; we need not resort to automatic reversal.

defendants to challenge potential jurors they might find unsuitable a correct characterization. MCR 2.511(G) provides more than the plain language of MCL 768.13 contemplates by allowing for backstrikes. I am simply at a loss to explain how the trial court's refusal to allow for backstrikes constitutes a miscarriage of justice. The court's erroneous interpretation of the rule applied equally to both parties. The majority opinion's claim that an improper denial of a peremptory challenge results in a "miscarriage of justice" rings hollow.[43] Since the trial court's error involved only a violation of a court rule, there is no significant, let alone constitutional, basis to require automatic reversal. And since the evidence presented at trial overwhelmingly supports the jury's verdict and any impartial jury would have reached the same verdict in this case, I would find the error harmless and not disturb the jury verdict that resulted in defendant's proper convictions and sentences.

Brian K. Zahra
Elizabeth T. Clement
David F. Viviano

---

[43] The only case addressing a trial court's improper denial of a backstrike provided by court rule found the error to be harmless. *State v Shrader*, 881 So 2d 147, 153-154 (La App 2 Cir 8/18/04), mod 881 So 2d 147 (La App 2 Cir 9/24/04), rev'd on other grounds *State v Sims*, 7 So 3d 1288, 1292 (La App 2 Cir 4/15/09).